**OLD REPUBLIC INSURANCE COMPANY,**
Appellant,

v.

**Olive BEGLEY, Individually, and for Margaret Ann Begley, et al., Appellees.**

Court of Appeals of Kentucky.

June 20, 1958.

Maxwell P. Barrett, Willis W. Reeves, Hazard, for appellant.

Robert Muncy, A. E. Cornett, Hyden, for appellees.

STANLEY, Commissioner.

The question is whether the appellant, Old Republic Insurance Company, is liable as workmen's compensation insurer of Walter Lewis, dba Lewis Motor Company, to the dependent family of Theo Begley, who was killed while operating a taxicab as Lewis' employee.

The circuit court confirmed the finding of the Board and awarded Begley's family an appropriate judgment against the employer. The court directed that the appellant pay the award. Lewis, the employer, does not appeal or cross-appeal, so the question relates to the construction of the insurance contract with respect to the particular employment and service in which the deceased employee was engaged at the time he was killed.

Lewis, as sole owner, operated a theatre and a garage, under the name of the Lewis Motor Company, in Hyden. Begley was employed at the garage. Begley did general work in and around the garage. He drove trucks and other garage machines. Lewis operated a one-car taxicab service in connection with the garage and Begley customarily drove the car, which was used exclusively for that service. He was carrying a paying passenger when the cab was wrecked and he received fatal injuries. Lewis had only one pay roll for all his enterprises.

The statute requires every employer to keep his liability insured by an authorized insurer or by depositing acceptable bond or other security with the Board. KRS 342.340. The various provisions of the statute form a definite part of the insurance contracts. The statute requires that such a policy contain a direct promise by the insurer to pay the person who may be entitled to compensation. KRS 342.-365. KRS 342.375 requires that "Every policy or contract of workmen's compensation insurance * * * shall cover the entire liability of the employer for compensation under this chapter to everyone of his employees covered by such policy, except as otherwise provided in KRS 342.-345, regardless of whatever other contingencies may be insured or provided for by riders attached thereto or endorsements made thereon." The statute further provides: "On the face of every such policy shall be printed conspicuously the words, 'Insurance under this policy is in class (designating the class) of the company's workmen's compensation classification manual.' In the blank provided the number or other designation in the manual under which the policy is written shall be placed before the policy is issued. If more than one class of risk is covered by the same policy, the separate risks and their corresponding manual classifications shall be stated in the same manner."

Thus, the statute recognizes that an employer may be engaged in several businesses; but if he desires any particular business to be within the Workmen's Com-

pensation Act, it shall be specially designated.

The forms by which Lewis signified the acceptance of the provisions of the Workmen's Compensation Act (filed pursuant to KRS 342.390) stated his business to be "auto sales and service" and that his method of securing payments of compensation was "Coal Operators Casualty Company." The appellant succeeded that company as insurance carrier. Therefore, we have an acceptance of the compensation law limited to selling and servicing automobiles.

The "manual classification" referred to in KRS 342.375, above quoted, is in a manual approved by the Insurance Commissioner of Kentucky. The manual lists various classifications and premium rates applicable to various business operations. These classifications are indicated by code numbers. There are two code numbers for garages, one, No. 8748, for automobile salesmen, and the other, No. 8391, for all other employees. Likewise, there are two code numbers for taxicab companies or operators, one of which, No. 7382, applies to chauffeurs, helpers and the like. The policy issued to the Lewis Motor Company did not cover either class of taxicab company employees. The classifications and coverage are thus stated:

"Automobile Sales or Service Agencies:

| | |
|---|---|
| Automobile Salesmen | Code No. 8748; Premium $0.53 |
| All other employees—including accessory or spare part salesmen; chauffeurs and their helpers.* | Code No. 8391; Premium $0.87 |

◆

The classifications of risks fixed as prescribed by statute are binding on the insurer and the insured. 44 C.J.S. Insurance § 64c.

Literally, therefore, the policy did not cover the operation of a taxicab as an independent business or enterprise. The question is whether the classification of a garage chauffeur, covered by Code No. 8391, should be construed to embrace an employee engaged in operating a taxicab when he was killed.

It seems to us that the classification of garage chauffeur was intended to embrace one who, as an incident of his employment in a garage, drove cars used in the general business, or cars of patrons, where it was part of the garage service. The operation of a taxicab is not generally regarded as an incident of the garage business. Such operation is specifically regulated by the statute as an independent business. Thus, the operation of a taxicab requires a special certificate and license as a common carrier, issued by the Department of Motor Transportation. KRS 281.010 (19), 281.660, 281.815(3). Taxicabs are subject to certain regulatory powers by the city in which the service is rendered, KRS 281.632, and may be required to pay a city license. KRS 281.830. A driver of a taxicab must meet specific requirements and obtain special certification by the Department of Public Safety. KRS 281.-726. The insurance premium for this class of employees is higher than that for garage employees generally.

We take note of analogous but distinguishable cases.

In Kelly v. Nussbaum, 218 Ky. 330, 291 S.W. 754, the employer had designated his business as a "junk dealer." The insurance policy likewise described its coverage and expressly excepted blasting and building

* Applies to garage employees only."

wreckage. Three of Nussbaum's employees were injured while wrecking an old building. In construing the compensation insurance policy, notice was taken of the provision of the statute which is now KRS 342.375 and of the classification manual of compensation and liability insurance. We held that a policy of this character is only for complete coverage of risks so classified and none other. The distinction between that case and this is that in the Kelly case there was an express exclusion of the particular activity, while in the present case the exclusion is by general inference arising from the use of the specific term "garage employees only."

Buckhorn Coal and Lumber Company v. Georgia Casualty Co., 222 Ky. 683, 2 S.W.2d 383, was a suit to recover premiums. The employer sought to avoid liability for the entire premiums based on its pay roll, mainly because in its notice of election to come under the Compensation Act the employer had stated its business to be "logging and lumbering, including the tie hoists at" three stated places. We held that this could not be construed as excluding the business or industry of logging and lumbering at a location not named and that it was proper to take into consideration the wages of all of the employees engaged in that business and within that classification. The case is of little application, but the opinion refers to several sections of the pertinent statutes relating to notice of election and the definite operations or business designated.

Nugent Sand Co. v. Hargesheimer, 254 Ky. 358, 71 S.W.2d 647, is distinguishable. Nugent was operating but one business. His employee was only temporarily outside of his accustomed work but was within the orbit of his employment as a mechanic. Insurance liability was not involved. Here, Lewis was operating three different businesses, each of which was classified separately and required payment of a different premium. The taxicab business was not within the classification covered by the pol-

icy issued for his auto sales agency and garage.

In Aetna Life Insurance Co. v. City of Henderson, 228 Ky. 1, 14 S.W.2d 211, a city truck driver, who was under the general supervision of the superintendent of streets, was injured while delivering coal to the city's gas plant. A policy of workmen's compensation insurance was issued to the city by the Aetna Company covering employees engaged in street cleaning, including truck drivers and other employees engaged in street paving work and the like. Another insurance company had issued a similar policy covering the operation of the gas works. Referring to the holding in Kelly v. Nussbaum, supra, as to the statutory requirements of a policy of this character, we held that the Aetna Company was not liable under its policy covering street employee classifications. In the companion case of City of Henderson v. Royal Indemnity Company, 227 Ky. 746, 14 S.W.2d 213, we held the carrier of insurance covering the operation of the gas works was liable for the payment of the award. The conclusion was reached under a broad consideration that hauling coal was necessary for the operation of the gas works and that the employee was performing a duty in relation thereto, although he was under supervision of the street superintendent. This decision was reached notwithstanding a rider attached to the policy which undertook to limit the coverage to employees of the gas works.

■ Professor Larson does not like the foregoing interpretation of what is generally denominated as the "full-coverage" provision of workmen's compensation acts. He calls these City of Henderson cases a "most remarkable piece of statutory demolition" in holding that the statute limited liability to the particular classifications named in the policies. 2 Larson's Workmen's Compensation Law, § 93.20, p. 461. The learned author seems to have overlooked the fact that the terms of our statute, KRS 342.375 (quoted at length earlier

in this opinion), which require that every policy shall cover the "entire liability of the employer," are not absolute. The statute does make liability of the insurer complete, regardless of contingencies and policy provisions indicated by riders or endorsements; but this statutory mandate is accompanied by the specific requirement that every policy shall on its face designate the class of risk insured. It thereby provides that complete coverage is only for a particular classification.

Many workmen's compensation statutes expressly provide that all policies of insurance shall cover the employer's entire liability. Others authorize the insurer to limit its own liability to a certain extent, even as between the insurer and the beneficiary employees. Notes, 45 A.L.R. 1329; 108 A.L.R. 812. A number of cases digested in these annotations sustain the view that the insurer's liability under its particular policy may not be co-extensive with the liability of the employer himself under the statute, and hold that there is no liability on the part of the insurer where its policy does not cover the particular class of employment or where there is no natural connection between the business insured and the business in which the injured or deceased employee was serving.

■ We are, therefore, constrained to hold that although the appellant's insurance policy covered the deceased employee in the operation of Lewis' garage, the policy did not cover liability for his death in the operation of a taxicab.

■ The appellee beneficiaries contend that the appellant is estopped to deny its liability. It is well established that liability for workmen's compensation may be based on estoppel. Smith Coal Co. v. Feltner, Ky., 260 S.W.2d 398. So far as the employer in this case is concerned, there can be little doubt that estoppel binds him. But, as stated, his personal liability is not contested. The question is whether the insurance carrier is estopped.

According to Lewis' testimony, Fred Brashear collected the premiums as agent or representative of the Garnett Insurance Agency, located in Hazard, which had issued the policy for the Nahm Insurance Agency in Louisville, who were agents for Lloyds of London. The record does not show these connections with the appellant, Old Republic Insurance Company. As we gather from the evidence, Brashear had from time to time participated in the audit of Lewis' pay roll, which, as stated above, included all his employees, both at the garage and at the theatre. Brashear had formerly been Lewis' bookkeeper and had made up the pay rolls when he was so employed. The basis of the claim of estoppel of the insurance carrier is no more than the assumption that the appellant company, through Brashear, knew that Begley was in the habit of driving the taxicab, and that the premiums collected from Lewis were computed in part upon Begley's entire wages of $40 a week.

■ An elementary principle of equitable estoppel is that one who knows or should know of a situation or a material fact is precluded from denying it or asserting the contrary where by his words or conduct he has misled or prejudiced another person or induced him to change his position to his detriment. Kentucky Home Life Insurance Co. v. Kittinger, 262 Ky. 525, 90 S.W.2d 673, 103 A.L.R. 1361; American Casualty Co. of Reading, Pa. v. Shely, 314 Ky. 80, 234 S.W.2d 303.

■ While compensation insurance is for the protection of workmen and they and their successor dependents are by the statute made direct beneficiaries, the insurance contract in this case did not cover the activity of a taxicab driver, in which business the deceased was engaged when he met his accidental death. The risks insured against are to be determined by the terms of the policy, Brotherhood of Railroad Trainmen v. Wilkins, 257 Ky. 331, 78 S.W.2d 6, and provisions of the statute which are deemed a part thereof. 45 C.J.S. Insurance § 824.

A contract of insurance cannot be created or enlarged by estoppel or waiver. 44 C.J. S. Insurance § 275. We perceive nothing in the record which would authorize the court to extend the coverage of the contract by reason of any knowledge or act on the part of the company even if it be assumed that the workman, Begley, believed that he was protected by the insurance.

The judgment is accordingly reversed.