The GLOBE INDEMNITY COMPANY,
Appellant,

v.

Phyllis H. DOYLE et al., Appellees.

Court of Appeals of Kentucky.

March 29, 1968.

C. W. Swinford, Stoll, Keenon & Park, Lexington, for appellant.

Philip Hargett, James E. Clarkson, Donald L. Wood, Maysville, for appellees.

PALMORE, Judge.

Allen Doyle, an employe of Charles H. Arnold Distributing Company, Inc., was

killed in an airplane crash. His widow and other dependents brought this workmen's compensation proceeding against the employer and its insurer, The Globe Indemnity Company (hereinafter called Globe). Globe filed special pleadings alleging that its policy "did not provide coverage for the occupation in which the * * * decedent was engaged at the time of the accident which resulted in his death." After hearing the evidence pertinent to that issue the board determined that the policy applied. Globe's appeal to the circuit court resulted in a judgment affirming the action of the board. KRS 342.285. Globe now appeals to this court. KRS 342.290.

There is no argument as to the amount of compensation and who is entitled to draw it. The only question in the case is whether the party required to pay it is the employer or the insurance company. The point of issue is that although Doyle was employed as a tractor-trailer driver, which definitely was within the policy coverage, he was used from time to time as an airplane pilot and was engaged in piloting Mr. Charles H. Arnold, the company's owner, on a business trip at the time of the accident, in which both of them were killed.

It is our conclusion that the board and the circuit court were correct in holding that the employer's use of Doyle for a purpose different from his usual occupation, but within the scope of the business operation intended to be covered by the insurance, did not remove him from the coverage of the policy.

Charles H. Arnold Distributing Company, Inc., of Maysville, Ky., was engaged in the wholesale soft drink and beer distributing business. It was incorporated on December 8, 1965, prior to which time it appears that Arnold had operated it as a sole proprietorship. He also operated, as a separate corporation, a commercial airport across the Ohio River at Aberdeen, Ohio, and kept several airplanes there. However, the aircraft in which he and Doyle were traveling at the time of the fatal accident was Arnold's personal plane, which he used both for pleasure and for business purposes, and it is undisputed that the flight was being made on the business of Charles H. Arnold Distributing Company, Inc.[1]

The accident occurred on January 4, 1966. Doyle had been employed and put on the regular payroll of the distributing company during the pay period ending September 16, 1965, at $100 per week. Though engaged in the capacity of a tractor-trailer operator he was able to do many things and was a licensed airplane pilot, all of which Arnold knew. The secretary-treasurer of the company explained as follows:

"Well, when Allen went to work for us we knew he was an airplane pilot and with this in our mind and owning an airplane in the business we figured if any occasion arose we could use him as a pilot in the airplane. Allen was a handy man. He would do anything there was to do, mechanic or carpenter or whatever it was. We knew this and this was what we had planned for him to do."

A log kept by Doyle showed that between May 3, 1965, and December 18, 1965, he had flown 38 business missions and several

---

1. Though it would not be a dispositive circumstance one way or the other, the record does not disclose the exact manner in which the title to Mr. Arnold's personal plane was held. In answer to the question, "How many airplanes did Mr. Arnold own?" the secretary of the distributing company replied, "At that date, they owned three at the airport, two new planes leased or on floor plan and his own private plane for Arnold Distributing Company." "So he had an interest in a total of six airplanes?" "That's right." The "hull insurance" on his private plane was carried by the same agency through which Globe's compensation policy was issued, but all the other planes were insured through another agency.

pleasure trips for Arnold. Ten of these business flights were made on or after September 14, 1965. On most of these occasions Arnold was a passenger.

The insurance policy under discussion had been issued some time before Doyle was employed by Arnold. It specified three categories of employes covered, as follows:

| Classification Number | Description | Rate |
|---|---|---|
| 8018 | "Store risk—Wholesale or combined wholesale and retail—n.o.c." | $1.03 per $100 |
| 8810 | "Clerical office employees—n.o.c." | $1.03 per $100 |
| 7380 | "Drivers, chauffeurs and their helpers—commercial." | $1.04 per $100 |

---

After issuance of the policy Arnold had acquired a property subdivision and some rental property, and the policy had been endorsed to cover those operations.

Standard rates and classifications for various types of businesses and employes for purposes of workmen's compensation insurance are set forth in a "Workmen's Compensation and Employers' Liability Insurance Manual" which has been approved by the Department of Insurance and is used by insurance agencies as a guide in preparing policies to cover the employes of the parties to be insured. In addition to the classifications listed on Globe's policy covering Arnold, the manual carries a classification No. 7421 for "Aircraft operation, transportation of personnel in conduct of employer's business, all members of flying crew," etc., the rate for which is $1.83 per $100 subject to adjustment based upon subsequent audits of the employer's records showing the weeks during which employes did or did not engage in flying.

Globe's position in this case is that in order for the policy to cover Doyle's employment while flying an airplane on the company's business it would have been necessary for it to list classification No. 7421. Much emphasis is placed upon the case of Old Republic Insurance Company v. Begley, Ky., 314 S.W.2d 552, 553 (1958).

In that case the insured employer, as sole owner, operated three businesses, a garage, a theater, and a taxicab, and had one payroll for all. The business covered by his compensation insurance was listed as "Automobile Sales and Service Agencies," under which the manual listed two classifications, "Automobile salesmen" and "All other employees—including * * * chauffeurs and their helpers." The injured employe worked around the garage and drove the taxicab as well. He was injured while driving a fare-paying passenger in the taxicab. This court reversed a judgment and award against the insurance company upon the ground that "the policy did not cover the operation of a taxicab *as an independent business or enterprise.*" (Emphasis added.) 314 S.W.2d at 554.

The insurance policy itself was not made a part of the record. We have before us only the "producer's copy" or agent's "daily," which lists the type of coverage by classification and rates. It does not show the type of business in which the distributing company was engaged. The employer's notice of acceptance, Form No. 1, filed with the Workmen's Compensation Board indicated "Kind of business being conducted" as "Soft Drink and Beer Distributor." The employer's proof of insurance, Form No. 14, signed by Globe's insurance agent and also filed with the board,

certified that Globe had issued a policy covering the distributing company and insuring its liability to pay compensation to its employes. A line on this form for "If not full coverage, state extent of" was left blank.

The opinion in Old Republic Insurance Company v. Begley, Ky., 314 S.W.2d 552 (1958), contains a rather exhaustive analysis of this court's previous decisions involving similar questions, together with the meaning and effect of KRS 342.375. Two of the cases there discussed, Kelly v. Nussbaum, 218 Ky. 330, 291 S.W. 754 (1927), and Aetna Life Insurance Co. v. City of Henderson, 228 Ky. 1, 14 S.W.2d 211 (1929), are cited by Globe in this case. In *Kelly*, the employer's notice of election to accept the compensation law described his business as "junk dealer," and the insurance police covered his employes while engaged in that business. The manual classification expressly provided that the covered operation of a "junk dealer" would not extend to blasting or wrecking of buildings. The employe was injured while engaged in wrecking a building. It was held that the insurance did not apply. In *Aetna*, the employer was a city which was engaged in several different operations, including the proprietary function of operating a gas plant. It had separate policies of workmen's compensation insurance for its gasworks and for its street department. Several truck drivers under the direction of the superintendent of streets customarily were used in the work of other departments, and their time was charged to and paid from the funds of those departments. One of them was injured while performing an assigned task for the gas department. It was held that the policy issued for the street department did not apply. On the other hand, in a companion case, City of Henderson v. Royal Indemnity Co., 227 Ky. 746, 14 S.W. 2d 213 (1929), it was held that the insurance on the gasworks *did* apply, even though the policy showed that in the operation of

that department the city used no drivers or drivers' helpers. In the latter opinion, after pointing out that the policy covered any and all employes engaged in the operation of the gasworks, the court made this further comment: "If the contract itself did not so provide, the law writes such a provision into the contract for the parties."

In a very recent case, Aetna Casualty & Surety Co. v. Freeman, Ky., 427 S.W.2d 220 (decided March 1, 1968), the employer operated a machine shop. The classification specified in his workmen's compensation insurance policy was "Machine Shops n.o.c." At the time the policy was issued he had three employes, all of whom operated machines. Later, as the business grew, the number of employes reached nine or ten, all of whom operated machines but some of whom also did other jobs incident to the business, such as truck driving and maintenance work. It became necessary that the employer's business be moved to another location. One Freeman, a construction worker, was employed to assist in this operation, and he was injured while applying roofing to the new building. We held in substance that the insurance coverage extended to all employes engaged in work incidental to the operation of the machine shop business, which included the work Freeman was doing at the time he was injured.

■ All these decisions are consistent with the conclusion in the case now before us that Doyle was covered while flying the airplane in connection with his employer's beverage distributorship business, because the work was incidental to the business operation the insurance was intended to cover. If, on the other hand, he had been killed while flying a plane for some other business purpose of Arnold, such as the airport operation, the *Begley* case would have applied.

Let the first sentence of KRS 342.375 be read and considered once more: "Every policy * * * shall cover the entire liability of the employer for compensation under this chapter to every one of his employes covered by such policy," etc. Larson (2 Larson's Workmen's Compensation Law § 93.20, p. 461) has chided our construction of this language as requiring something less than full coverage. In *Begley*, 314 S. W.2d at 555, we responded to this criticism by calling attention to the statutory phrase "covered by such policy" qualifying the word "employes." We do not believe, however, that the legislative intent was to permit a coverage that would extend to certain workmen and not to others (unless, as the statute provides, they are protected by employer's self-insurance under KRS 342.340 and 342.345) who are employed in the same business. Our cases have gone only so far as to reject the argument that if the employe is covered at all by the policy (as Doyle was), he is covered regardless of what he is doing for the employer, and have held, as in *Begley,* that he is covered only if he is engaged in the business operation for which the policy was procured and issued.

It is our opinion that when there has been an election to operate under the provisions of the workmen's compensation act the law intends for all eligible employes to be covered by insurance or employer's self-insurance. It is the responsibility of the employer and his insurer to see to it that the classifications set forth in the policy are sufficiently comprehensive to include all eligible employes. If they do not, one of them may have a remedy against the other, but the employe is covered by the insurance.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, MONTGOMERY, OSBORNE and STEINFELD, JJ., concur.