**COMMONWEALTH of Kentucky, DEPARTMENT OF REVENUE and Kentucky Board of Tax Appeals, Appellants,**

v.

**ASHLAND OIL & REFINING COMPANY, a Kentucky Corporation, Appellee.**

Court of Appeals of Kentucky.

Jan. 30, 1970.

William S. Riley, Norris A. Harmon, Dept. of Revenue, Frankfort, for appellant Commonwealth of Kentucky Department of Revenue.

James V. Marcum, Ashland, for appellee.

McChesney & Kinker, Harry V. McChesney, Jr., Frankfort, for Amicus Curiae Jack Cole Co.

CLAY, Commissioner.

This case involves the constitutionality of KRS 138.565(1) which levies a seven cents per gallon tax on "special fuels", principally diesel fuel. The Chancellor construed the statute as imposing a constitutionally prohibited burden on interstate commerce and held it invalid to the extent it taxed fuel used by appellee in its freight carrier operations outside the State of Kentucky. The taxes involved accrued after the above statute was amended in 1960.

KRS 138.565(1) in pertinent part reads:

"An excise tax of seven cents per gallon is hereby levied and shall be paid by the special fuels dealer to the department

on all taxable special fuels * * * *withdrawn by* the special fuels dealer *to propel any motor vehicles on the public highways either within or without this state, except* a special fuels dealer engaged in the business of *transporting persons for hire* who shall pay said tax with respect to special fuels *actually used in this state.*"

Appellee falls within the classification of a "special fuels dealer" not "transporting persons for hire." The predecessor to this statute levied a similar tax on special fuels "used by the special fuels dealer to propel motor vehicles on the public highways". In Department of Revenue v. Greyhound Corporation, Ky., 321 S.W.2d 60 (1959), we held such tax could not be collected on fuel used beyond the confines of this state because it constituted a constitutionally forbidden burden on interstate commerce. (Article 1, § 8, U.S. Constitution) This conclusion was reached on the theory that the tax was on the *use* of the fuel.

■ The decision in Greyhound is traceable to Helson v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683 (1929). Therein the Supreme Court considered a Kentucky law imposing a tax of three cents per gallon on all gasoline sold at wholesale within the Commonwealth. Such sales were defined to include gasoline purchased without the state for *use* within the state. Plaintiffs were engaged in an interstate ferryboat business. They purchased gasoline in Illinois and all of it was used in interstate commerce (75 percent was consumed in Kentucky). This tax was held invalid on the ground it was "exacted as the price of the privilege of using an instrumentality of interstate commerce". The opinion refers to the tax as being upon a "means" or a "medium" by which interstate transportation was effected. There was a dissent in this case and the concurring opinion of three Justices casts a shadow on the soundness of the decision. As an original proposition it might be questioned that *fuel* constitutes an "instrumentality" of interstate commerce, but the law appears settled that a tax which in effect constitutes a charge for the privilege of transacting interstate commerce transgresses constitutional limitations. Adams Express Co. v. Ohio, 166 U.S. 185, 218, 17 S.Ct. 604, 41 L.Ed. 965.

In Commonwealth by Nelson v. Dixie Greyhound Lines, 255 Ky. 111, 72 S.W.2d 1032 (1934), we upheld a statute quite similar to the one condemned in Helson. We distinguished that case on the ground that the purpose of the statute was to tax the *withdrawal of the commodity* irrespective of the character of its use when the gasoline involved (imported from outside the state) was *stored and distributed* in Kentucky. In effect we held that Helson was limited to a distinctive factual situation and it simply had no application to the transactions under consideration.[1]

In Department of Revenue v. Greyhound Corporation, Ky., 321 S.W.2d 60 (1959), heretofore referred to, we construed the former tax (prior to the 1960 amendment to KRS 138.565(1)) as being imposed upon the interstate *consumption* of fuel. It fairly can be argued that the legislature, in amending KRS 138.565(1) in 1960, was seeking to rectify the constitutional defect condemned in that case. Unfortunately, in prescribing the actual impact of the tax, it sealed its fate insofar as it affected interstate operations. Instead of creating a withdrawal tax on special fuels, which was suggested in the Greyhound case, the legislation actually imposed a special charge on the out-of-state use by carriers of freight.

Section 138.560(3), in effect when this controversy arose,[2] thus defined taxable special fuels:

" 'Taxable special fuels' means and includes all combustible gases and liquids

---

1. It would appear the Helson decision improvidently declared unconstitutional the entire statute involved when actually the only invalid aspect of it was its administrative application to a particular interstate operation.

2. This section was amended in 1962.

used for the generation of power in an internal combustion engine to propel vehicles of any kind upon the public highways, except * * * (not here pertinent).' "

While it could be argued that the reference to the use of the fuel in this definition was to identify the type involved in the taxable transaction, the language is substantially the same as that we considered in Greyhound as creating a use tax. When read with KRS 138.565(1), the applicability of the tax is determined by the use to which the fuel is put on the public highways. The significance of the nature of the use as gauging the impact of the tax is re-emphasized in that statute by repeating the language found in the definition (KRS 138.560(3)) and adding the words identifying public highways as those "either within or without this state". It simply cannot be successfully maintained that the tax is on the withdrawal of fuel, as the Commonwealth contends, when liability therefor can be determined only by the nature and place of its use.

Fortifying this conclusion is the exception appearing in KRS 138.565(1). That exception exempts fuel withdrawn by carriers of passengers and not "actually used in this state". Here again the use of the fuel, not its withdrawal, is the measure of tax liability.

It will thus be seen the wording of KRS 138.560(3) and 138.565(1) shows a *use tax approach* to the withdrawal of special fuels. The only motor carrier who must pay seven cents per gallon for *all* fuel withdrawn in Kentucky is the carrier of freight who uses it in operations on interstate highways.

Appellants rely heavily upon Edelman v. Boeing Air Transport, 289 U.S. 249, 53 S. Ct. 591, 77 L.Ed. 1155 (1933). Wyoming levied a license tax of four cents per gallon on all gasoline "used" for domestic consumption in the state. There was no qualifying language such as appears in the Kentucky statute before us. The tax was administratively applied to gasoline stored within the state and withdrawn for consumption. The plaintiff was an airline operating in interstate commerce and claimed the tax imposed was unconstitutional to the extent the levy was upon gasoline withdrawn from storage to fill the fuel tanks of its interstate planes. It was held the withdrawal from storage constituted the "use" transaction, and this was completed before interstate commerce began. The tax did not therefore transgress constitutional limitations.

The Edelman case, instead of supporting the Commonwealth's position, makes clear the distinctive feature of the Kentucky tax which prevents it from being a "withdrawal" tax. It is not determined by the amount of fuel withdrawn. It is gauged by its use or consumption upon public highways. A carrier of freight must pay the tax on all fuel withdrawn whether it is used to propel its motor vehicles on highways within or without the state. A carrier of passengers is not required to pay the tax on that withdrawn for use in its motor vehicles operating outside Kentucky. Nor is a dealer who uses it for purposes other than the operation of motor vehicles on public highways. Consequently, the tax liability cannot be determined at the time of withdrawal. It can be determined only by ascertaining the nature of its use.

We can only conclude that the tax imposes a special burden upon the carrier of freight for use of the fuel in its operations on highways in other states. This charge assumes the character of regulation of interstate commerce by a state in violation of the commerce clause of the federal Constitution (Article 1, § 8, U. S. Constitution). Appellee was improperly assessed for taxes on special fuels consumed in its interstate operations on highways outside

Kentucky, and the Chancellor correctly so decided.

The judgment is affirmed.

EDWARD P. HILL, C. J., and MILLI-KEN, NEIKIRK, PALMORE, REED and STEINFELD, JJ., concur.