**DEPARTMENT OF REVENUE, Commonwealth of Kentucky, Appellant,**

v.

**ASHLAND OIL & REFINING COMPANY, Appellee.**

Court of Appeals of Kentucky.

Dec. 18, 1970.

William S. Riley, Asst. Atty. Gen., Cyril E. Shadowen, Dept. of Revenue, Frankfort, for appellant.

James V. Marcum, Ashland, for appellee.

CLAY, Commissioner.

This is an appeal by the Department of Revenue (hereinafter Department) from a circuit court judgment reversing an order of the Kentucky Board of Tax Appeals. That order had sustained a tax assessment

against appellee (hereinafter Ashland) based on the sale of "special fuels" to Rockcastle Oil Company (hereinafter Rockcastle) during the period August 22, 1962 through May 22, 1963. It is claimed by Ashland that the fuel sold was exempt from taxation, and that in any event the Department was estopped from making this claim. The Chancellor was of the opinion that arbitrary administrative action of the Department created a situation in which it would be inequitable to collect the tax from Ashland. The amount involved is approximately $46,000.

KRS 138.565 levies an excise tax of seven cents per gallon on "special fuels" (principally Diesel oil). These are defined as:

"* * * all combustible gases and liquids capable of being used for the generation of power in an internal combustion engine to propel vehicles of any kind upon the public highways, * * * [except gasoline and liquified petroleum]." KRS 138.560(3)

The tax is to be paid by every "special fuels dealer", who is:

"* * * any person who delivers special fuels into tanks or other containers equipped with a hose or other apparatus by which such fuel can be dispensed therefrom into the fuel tank of a motor vehicle." (KRS 138.560 (6))

The tax must be paid by the special fuels dealer on:

"* * * all special fuels delivered to any person engaged in the business of selling special fuels for use in motor vehicles except when such deliveries are made to another licensed special fuels dealer." (KRS 138.565 (1) (a))

Before and during the tax period in question, Ashland was a licensed special fuels dealer. Prior to June 12, 1962, Rockcastle was also such a dealer. For approximately two years Ashland had delivered fuel to Rockcastle and was not required, under the exemption last above quoted, to collect the tax from Rockcastle. On June 12, 1962, Rockcastle's license was surrendered and cancelled. It was customary for the Department to notify all licensed special fuels dealers of such cancellations. Due to an oversight Ashland was not so notified. However, on August 22, 1962, the Department published and distributed to Ashland a list of licensed dealers, and Rockcastle no longer appeared on this list. Thereafter Ashland continued deliveries to Rockcastle without collecting or paying the tax, although Rockcastle continued in the business of selling special fuels (bought from others) for use in motor vehicles.

■ The Chancellor took the view that the Department had acted arbitrarily when it permitted Rockcastle to surrender its license and continue to sell motor fuel, and this arbitrary administrative act led Ashland into a position where it would be inequitable to impose the tax on it. It is difficult to discern in what manner the Department acted arbitrarily in cancelling Rockcastle's license. There was justifiable grounds therefor under KRS 138.580(1), and Rockcastle agreed to it. The subsequent unlicensed operation was not authorized by the Department. There appears no sound basis for Ashland's contention that the Department was at fault in permitting Rockcastle to continue to operate as a special fuels dealer after the cancellation of its license. The failure of the Department to invoke criminal penalties against Rockcastle did not give Ashland any right to ignore its statutory obligation to pay the tax, provided taxable fuel was involved.

Ashland's only meritorious defense to the Department's claim is that the fuel delivered by it to Rockcastle was not a *taxable* special fuel. It is clear from the various provisions of KRS Chapter 138 and the regulations of the Department that the tax was to be paid *only upon special fuel used as motor fuel to propel vehicles upon public highways*. Combustible gases and liquids sold or delivered for nonhighway

use were not intended to be taxed. However, in order to insure the collection of the tax when due, the legislature placed upon special fuels dealers who delivered special fuels the primary responsibility for paying the tax, with two specified exceptions and one possible exception.

The Department argues that such dealer cannot escape this liability unless under KRS 138.565(1) (a) the fuel is either (1) delivered to another licensed special fuels dealer, or (2) is delivered into approved storage facilities, and neither exception is present in this case. On the other hand Ashland contends that on its deliveries at its plant into Rockcastle's tank trucks it was acting as a supplier and not a special fuels dealer, because it was not then delivering into containers designed to dispense such fuel into a motor vehicle. These arguments by both parties are limited to the interpretation of subsection (a) of KRS 138.565(1), and have been the principal cause of confusion in this controversy. We do not believe either position is sound. In our opinion the question of tax liability in this case is controlled by subsection (b) of KRS 138.565(1). It provides in part:

"* * * it shall be presumed that all special fuels delivered by any special fuels dealer within this state are taxable unless the contrary is established by the special fuels dealer pursuant to regulations prescribed by the department." (Emphasis added)

Ashland is a special fuels dealer (although it also acts in other capacities). It delivered special fuels within this state to Rockcastle. Regardless of the place of delivery or the type of container into which it was delivered, the presumption was that this was taxable special fuel.

However, throughout this proceeding Ashland has contended that what it delivered to Rockcastle was used for heating or other non-highway purposes and was therefore not taxable. There was some evidence the fuel was used for a nontaxable purpose. The Kentucky Board of Tax Appeals considered one item of this evidence but, misconstruing Ashland's argument, concluded that since the fuels were "capable of being used" in motor vehicles they were "special fuels". No one had contended otherwise. The question is whether it was *taxable* special fuel.

We understand the Department has not promulgated any regulations with respect to the manner in which the presumption of taxability under subsection (b) may be rebutted. (Perhaps this matter should be given some thought.) In the absence of such regulations, the general rules of evidence should apply. In our opinion the sole issue in this case is whether Ashland overcame the presumption that the special fuel delivered to Rockcastle was taxable. The Kentucky Board of Tax Appeals did not pass upon it, although it was properly raised. The case should be remanded to the Board for a further hearing and determination of this question, both parties being given the right to introduce additional evidence if they so desire.

The judgment is reversed, with directions to remand the case to the Kentucky Board of Tax Appeals for further proceedings consistent with this opinion.

MILLIKEN, NEIKIRK, OSBORNE, PALMORE and REED, JJ., concur.

HILL, C. J., and STEINFELD, J., not sitting.