**TEXACO, INC., Appellant,**

v.

**JOHN MARTIN, DISTRIBUTOR, INC.,
Appellee.**

Court of Appeals of Kentucky.

March 12, 1971.

As Modified on Denial of Rehearing
Nov. 5, 1971.

Alexander G. Booth, Gerald Kirven, O. Grant Bruton, Louisville, for appellant.

C. Maxwell Brown, Louisville, Rudy Yessin, Frankfort, for appellee.

CLAY, Commissioner.

Plaintiff appellant brought suit against defendant appellee to recover approximately $19,000 it had paid the Commonwealth of Kentucky as taxes upon diesel fuel delivered to defendant over a three-and-one-half-year period from 1961 to 1965. The trial court submitted to the jury the issue of whether defendant had agreed to pay these taxes and the jury found for it. Several questions are raised on this appeal, but our disposition of the case makes it unnecessary to discuss all of them.

In 1961, after defendant's business had been solicited, plaintiff began sending de-

fendant annual "quotations" of a gallonage price on diesel fuel. These quotations recited:

"'seller's posted normal consumer tank-wagon price in effect at time and place of delivery, *plus any tax that may be levied,* less $.035 per gallon.'" (Emphasis added)

For three and one-half years defendant ordered, accepted and paid for at the specified prices approximately 80,000 gallons of fuel each year. The payments were made on the basis of invoices sent by plaintiff to defendant. These invoices *did not contain any tax charge.*

It so happens that there is a seven-cent tax imposed on "taxable special fuels" (which includes diesel fuel) by KRS 138.-565. For a full discussion of the nature of this tax and the problems which arise in connection with its collection, attention is called to Commonwealth, Dept. of Rev. v. Ashland Oil & R. Co., Ky., 449 S.W.2d 904 (1970), and Department of Revenue v. Ashland Oil & Refining Co., Ky., 461 S. W.2d 363 (1970). It is the primary responsibility of the selling "special fuels dealer", and the plaintiff was such dealer, to pay this tax. KRS 138.565. (See cases above cited.) In 1965 the Department of Revenue assessed and collected from plaintiff approximately $19,000, representing a seven-cent-per-gallon tax upon roughly 280,000 gallons delivered to defendant upon which taxes had not been paid. This is the sum plaintiff seeks to recover from defendant.

The reason given by plaintiff for the failure to bill defendant for these taxes on its invoices was that it was laboring under a misapprehension either that defendant was a "licensed special fuels dealer" (from whom plaintiff was not required to collect the tax under KRS 138.565(a)) or that de-

fendant was actually paying the tax directly to the Department of Revenue. The fact is, defendant held a "Highway Motor Fuel User's" license and had paid directly to the Department of Revenue as a motor carrier, under KRS 138.660, seven cents per gallon on the fuel it used *in operations on Kentucky highways.*[1]

The controversy presented in the court below and presented here is whether defendant agreed to pay such Kentucky taxes as were due upon the deliveries of fuel to it. As above mentioned, the issue was finally submitted to the jury even though both parties had sought to have the question decided as a matter of law. Since the basic and ultimate facts are not in dispute, there simply was no jury issue on this point.

Defendant takes the position that it never received any of the quotations which plaintiff says were mailed to it. In view of the fact that defendant ordered, accepted and paid for over 280,000 gallons of fuel at the invoiced gallonage price based on the quotations, it borders on the absurd to suggest that it was unaware of the terms recited in those quotations. In the light of the dealings of the parties and by an admission in defendant's brief, obviously there was a binding contract between the parties with respect to the price of the fuel. The real argument defendant makes is that while it agreed to the prices, it did not agree to pay any taxes. The difficulty with this position is that, as clearly stated in the quotations, the payment of taxes levied was as much a part of the price as was the discount allowed.

■ Defendant contends that the quotations did not even constitute offers to enter into contracts, and that the invoices constituted the only basis of its obligations. However, the plain fact is that the contract came into being *before* receipt of the

---

1. There appears to be some discrepancy between KRS 138.565 and KRS 138.660, but KRS 138.695(1) attempts to tie them together by allowing a credit. The pur-

pose of KRS 138.660 would seem to be to reach fuel purchased out of the state for use in Kentucky.

invoices. The rights and obligations of the parties at least became determinable when defendant accepted delivery of the fuel. Certainly plaintiff could not have charged defendant any more than the quoted price. By the same token defendant cannot fairly assert that it agreed only to the gallonage price but did not agree to be bound to the specification that the price was "plus" tax.

■ If more than elemental reasoning is required, it may be pointed out that beginning in 1965 plaintiff included in its invoices the seven-cent-per-gallon tax, and, although there had been no different pricing or billing arrangement made between the parties, defendant paid these taxes without question. This discloses an awareness and understanding of the terms of the annual agreements between the parties and a recognition by defendant of its obligation to pay whatever taxes were due upon the deliveries. See Louisville & N. R. Co. v. Coyle, 123 Ky. 854, 97 S.W. 772 (1906), and Jones v. Linkes, Ky., 267 S.W.2d 936 (1954). It also may be observed that plaintiff offered to prove it was a matter of custom in transactions of this sort for the buyer to pay such fuel taxes as would be due the Commonwealth. The trial court excluded this evidence from the consideration of the jury, although we think it was competent and relevant on the question of defendant's knowledge that the quoted prices did not include fuel taxes properly chargeable to it. While the special-fuels dealer is primarily responsible for paying this tax (since a 1962 amendment), its history and KRS 138.565(b) make it rather clear that ultimately the tax burden would be borne by the consumer.

As before mentioned, the essential facts in this case were not in dispute. It is evident to us as a matter of law that defendant assumed the obligation of paying those fuel taxes which were properly chargeable to it on the purchases it made from plaintiff. Therefore plaintiff was entitled to a directed verdict on this issue unless one other defense raised by the defendant was sustainable.

■ Defendant pleaded, and here contends, that plaintiff is estopped to assert its claim. As far as we can discern from the record, this issue was not ruled upon by the court or submitted to the jury. As here presented, it is a matter of equity. We find no merit in this defense.

Defendant contends in substance that it was plaintiff's duty initially to pay the taxes due, and that for three and one-half years plaintiff, by lack of diligence in failing to pay them and failing to add them to its invoices, misled defendant into believing that no tax was due. The governing principle is thus set forth in Old Republic Insurance Company v. Begley, Ky., 314 S. W.2d 552, 556 (1958):

"An elementary principle of equitable estoppel is that one who knows or should know of a situation or a material fact is precluded from denying it or asserting the contrary where by his words or conduct he has misled or prejudiced another person or induced him to change his position to his detriment. Kentucky Home Life Insurance Co. v. Kittinger, 262 Ky. 525, 90 S.W.2d 673, 103 A.L.R. 1361; American Casualty Co. of Reading Pa. v. Shely, 314 Ky. 80, 234 S.W.2d 303."

It was shown that plaintiff made inquiry of defendant concerning the possibility that the latter enjoyed a tax-free status. Defendant exhibited to plaintiff its "Highway Motor Fuel User's License" and plaintiff was under the impression defendant was a licensed special-fuels dealer from whom no tax was collectable. Beginning in 1962 this KYU certificate number was shown on the invoices, and later the invoices had stamped on them "LICENSED SPECIAL FUEL DEALER". The fact is, defendant was not a special-fuels dealer and its KYU certificate was not the basis for an exemption. Obviously plaintiff made a serious mistake, but there is no evidence of lack of good faith or an intent to mislead.

On the other hand defendant was paying the seven-cent tax *on fuel used in Kentucky* direct to the Department of Revenue, which it was required to do as a motor

carrier under KRS 138.660. It was defendant's understanding that this was the only tax it was required to pay in view of that statute.[2]

As of the time of these transactions, if the parties were mistaken concerning the actual or apparent tax liabilities, it was a mutual mistake. It was not the conduct of plaintiff that misled defendant. The latter's position was induced by its interpretation of such liability under KRS 138.660. Still further, plaintiff's conduct did not induce defendant *to change its position* to its detriment. Having so concluded, we find no meritorious defense to plaintiff's claim that defendant had obligated itself to pay such taxes as were due.

■ Thus we reach the real question in this controversy. That is, whether the taxes paid by plaintiff to the Department of Revenue were taxes properly chargeable to the defendant. It reasonably appears from the record that the defendant had paid taxes through the Department of Motor Transportation on all the fuel it used on Kentucky highways. The only question in issue is as to liability for tax on the fuel used on highways outside of Kentucky. The decision in Commonwealth, Dept. of Rev. v. Ashland Oil & R. Co., Ky., 449 S.W.2d 904, settles the question as to tax collected under the statutes as they existed prior to July 1, 1962, holding the statutes unconstitutional to the extent they undertook to tax fuel used on highways outside of Kentucky. The plaintiff in the instant case has made application to the Department of Revenue for a refund of the taxes involved in this case. Under the decision in the Ashland Oil case, and subject to the qualifications laid down in Department of Revenue v. Jack Cole Company, Ky., 474 S.W. 2d 70 (decided July 2, 1971, petition for rehearing overruled November 5, 1971), the plaintiff will be entitled to a refund of so much of the tax, on fuel that was used on highways outside of Kentucky, as was collected under the statutes as they existed prior to July 1, 1962. Since that tax on that fuel was unconstitutionally imposed, the plaintiff has no valid claim against the defendant with respect to it.

■ There remains the amount of tax, allocable to fuel used on highways outside of Kentucky, that was collected under the statutes as they existed after the amendments that took effect on July 1, 1962. The Ashland Oil case did not rule on the validity of the latter statutes. The distinctions between the two statutes, before and after July 1, 1962, was not a factor in the Jack Cole case, because of the way that case was practiced. But it is a factor in the instant case.

The posture of this case is not such as to make it appropriate for this court to rule in this case on the constitutionality of the statutes as they existed after July 1, 1962. The Department of Revenue is an indispensable party to a determination of the issue, and in accordance with KRS 418.075 the Attorney General should be given the opportunity to be heard. The circuit court is the proper place for the determination initially to be made, with all interested parties participating. Accordingly, we are remanding the case with directions that the Department of Revenue be made a party, the Attorney General be served in accordance with KRS 418.075, and that the issue of validity of the taxes imposed after July 1, 1962, be tried and determined, which determination will answer the question of the defendant's liability to the plaintiff for those taxes. As to the taxes imposed prior to July 1, 1962, the plaintiff's claim shall be dismissed.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, NEIKIRK, OSBORNE, PALMORE and STEINFELD, JJ., concur.

REED, J., not sitting.

---

2. We noted in footnote 1 a possible discrepancy between that statute and KRS 138.565.