CARTER *et al. v.* HODGES.

(*Knoxville*, September Term, 1939.)

Opinion filed October 21, 1939.

SILAS WILLIAMS, of Chattanooga, for plaintiffs in error.

C. G. MILLIGAN, of Chattanooga, for defendant in error.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a suit by Mrs. Irene Davis Hodges to recover compensation for herself and three minor children under the Workmen's Compensation Law of Tennessee, Code 1932, Section 6851 et seq., for the accidental death of her husband, P. B. Hodges. The deceased lost his life in a fire which destroyed the Terminal Hotel at Atlanta, Georgia, in the early morning hours of Monday, May 16, 1938.

Deceased had been engaged for about three years in selling the products of defendant L. E. Carter, doing business as the Carter Candy Company, and who operates a candy factory in Chattanooga, Tennessee.

The circuit judge allowed compensation in an amount fixed by the statute and defendants have appealed to this court and assigned errors.

The issues in the case are as follows: (1) Was the deceased at the time of his death an employee of the defendant L. E. Carter within the contemplation of the Workmen's Compensation Law? (2) If deceased was an employee of L. E. Carter, was his death caused by an accident arising out of and in course of his employment?

The trial judge found both of these issues against defendants. From all of the evidence in the cause, he found ". . . that the relationship of employer and employee existed between defendant L. E. Carter and the deceased. Paschall B. Hodge; the said employee died on May 16, 1938, as the result of an accident arising out of and in the course of his employment. . . ."

It is insisted by defendants under one of their assignments of error that there is no evidence to support the judgment of the trial court. It is a familiar rule that if the findings of the trial judge in a compensation case be supported by any material evidence, then such judgment must be affirmed by this court.

It appears from the evidence that deceased was a traveling salesman, engaged in selling the products of defendant Carter, under an arrangement whereby he was compensated on the basis of five per cent on his gross sales and paid his own expenses. Carter would advance expense money to deceased and charge such advancements against the five per cent commission. Deceased's territory consisted of Tennessee, Kentucky, Alabama,

Mississippi, North and South Carolina and Georgia, except the City of Atlanta. Deceased left his home in Chattanooga, on his last trip on May 3, 1938. He went by Knoxville, Newport, Johnson City, into North Carolina and South Carolina, and into Georgia. Carter had some delinquent accounts he wanted deceased to collect in the Carolinas. It should be said that deceased was not responsible for the payment for goods sold by him; and got his commission whether the goods were paid for or not. Carter had the right under the agreement with deceased to request him to collect delinquent accounts.

The route taken by deceased was one of his regular routes. Carter testified, in part, as follows:

"Q. When he left it was agreed between you he would go toward Knoxville, to North Carolina and work in South Carolina, and then come down into Gerogia?

"A. That was his regular route, yes, sir.

"Q. The last point he worked before he got into Atlanta was Athens, Georgia?

"A. That is right.

"Q. Then after that, his custom was to go down to LeGrange and Newnan, Georgia?

"A. That is right.

"Q. Atlanta was directly on his route between Athens, Georgia and Newnan, Georgia?

"A. He would always spend the night in Atlanta on that route."

The last place worked by the deceased was Athens, Georgia. He then drove to Atlanta, reaching there Saturday. His plan was to spend Saturday and Sunday nights in Atlanta at the Terminal Hotel and by 6 A. M. Monday to be on his way to Newnan, LeGrange, Carrelton and Rome, Georgia, and thence back to Atlanta and home by Wednesday night.

Deceased kept his wife advised of his exact itinerary and where he would be at any given time. Carter, when wanting to know deceased's whereabouts, would 'phone Mrs. Hodges. This plan was adopted by deceased in order to make it unnecessary to incur the expense of advising both his wife and Carter of his whereabouts. Carter testified:

"Q. Now, you knew that the itinerary of the trip on which you sent him, you knew that would carry him through Atlanta?

"A. Yes sir; he was on his regular route when making the Carolinas and down in Georgia.

"Q. You expected him to go to Newnan and Le-Grange, Georgia?

"A. Yes sir."

Atlanta is on a direct line between Athens, Georgia, and Newnan, Georgia.

Carter was asked, in substance, if the only requests he made of deceased on this trip was to collect these accounts, to which he replied: "A. Yes sir; that was the main object of his going there (in the Carolinas), but he was about due to make this trip."

The proof shows that deceased sold candy for some other concerns in parts of his territory, *but not in the State of Georgia.* This was with the knowledge and consent of Carter. The only requirement was that Carter's goods be first shown a prospective customer. For goods of these other concerns sold by him, deceased received a commission of five per cent. It is evident under the proof that deceased carried these other goods as sidelines in order to help him in defraying his traveling expenses.

Defendant's theory is that the deceased was an independent contractor. Where a person performs serv-

ice for another the presumption is that he is an employee of such other and the burden is upon the latter who seeks to be relieved of the liability arising from such relationship to show that he was an independent contractor. *Sledge* v. *Hunt*, 157 Tenn., 606, 12 S. W. (2d), 529. This burden defendants have not carried, even if the following uncontroverted facts were not shown in the record.

(1) That Carter carried compensation insurance on all of his employees, including the deceased. He was carried on the pay-roll, on a separate ledger sheet, as an employee, and his earnings were included in computing the premium paid to the insurance carrier.

(2) Both Carter and the deceased paid the Social Security Tax on the earnings of the deceased.

In *Employers' Liability Assurance Corporation* v. *Warren*, 172 Tenn., 403, 112 S. W. (2d), 837, it was held that where an employer carries Workmen's Compensation Insurance and the earnings of the employee are included in computing premiums paid for such insurance, neither the employer nor the insurer is in position to question the relationship of the parties under the Compensation Law. Likewise, we think, the payment by Carter of Social Security Tax on the earnings of deceased was a recognition of the fact that deceased was an employee and leaves Carter in no position to deny that fact.

The record shows no inclination on the part of Carter to deny that deceased was his employee. The insurance carrier's attitude is shown by the following letter addressed to Mrs. Hodges:

"Chattanooga, Tenn.
"August 16, 1938

"Mrs. Irene Hodges,
  "207 Woodrow Avenue, Red Bank,
  "Chattanooga, Tennessee.
"Dear Mrs. Hodges:

"In furtherance of conversation with you relative to claim for compensation account of the death of P. B. Hodges. I am quoting below letter that I have personally received from the company under date of August 10th, which is self-explanatory:

" 'Replying to your inquiry of August 4th:

" 'The reason why we took a payroll on the salesman, P. B. Hodges, is because our policy protected the Employer for any liability which might be imposed upon him by the Compensation Law for injuries sustained by P. B. Hodges while in the course of his duties.

" 'The facts are, insofar as the claim is concerned, we have not denied any coverage with respect to P. B. Hodges but will be required to pay compensation if in the final analysis it is held that his widow is entitled to compensation. However, before compensation becomes payable it has to be established that the circumstances surrounding the injury were such that compensation becomes due. We are contesting the case because from the information which we have it is our opinion that the accident did not arise out of the employment of the deceased. The final decision will rest with the Compensation Commission. If they decide that compensation is in order it will be awarded and we will have to pay it.' "

  "Very truly yours,

                    "Sloan, Irvine & Sloan
                    "Jas. B. Irvine"

It is contended by counsel for the defendant insurance company that the above letter was not written by any one authorized to bind the company. It is shown that Sloan, Irvine & Sloan were the general agents of the company. The letter "from the company" quoted from in the above was signed by the "Superintendent Compensation and Liability Department."

Our conclusion from a consideration of the whole proof is that there is an abundance of material evidence to support the finding of the trial judge that deceased was an employee of the Carter Candy Company.

The second question presented is whether deceased met his death by an accident arising out of and in the course of his employment. Certainly, we think, he met his death in the course of his employment because his employment necessitated his going from Athens, Georgia, to Newnan, LeGrange and Carrelton, Georgia. His route lay through Atlanta. This was his regular route. Carter says, "He would always spend the night in Atlanta on that route." There was no deviation in his itinerary. It appears that he sold candy for the Schlesinger Candy Company, located in Atlanta, in the states of Kentucky and Tennessee; not in Georgia. The proof is that he did not contact the Schlesinger Candy Company on this trip. In going from Athens to Newnan and these other towns, via Atlanta, he was on his master's business.

We think deceased met his death in an accident growing out of his employment. Deceased was acting in course of the employment. The performance of duty made it necessary for him to travel, and, while going about the employer's business, injury resulted. *Employers' Liability Assurance Corp.* v. *Warren, supra,* and the authorities cited therein. Deceased had to eat and

sleep. He was away from home and, so, was under the necessity of putting up at a hotel or boarding house. In *Tennessee Chem. Co.* v. *Smith,* 145 Tenn., 532, 539, 238 S. W., 97, 99, the court quoted with approval the following from *Whiting-Mead Commercial Co.* v. *Industrial Accident Commission of California,* 178 Cal., 505, 173 P., 1105, 5 A. L. R., 1518:

"Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. . . . That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment."

All of the assignments of error have been examined and found to be without merit. The result is that the judgment of the trial court is affirmed.

MR. JUSTICE CHAMBLISS delivered a concurring opinion.

I concur in the holding that the deceased was an employee, in the contemplation of the Compensation Act, on the ground that both the employer and the insurer are bound by the practical construction both gave to the relationship.