## AUGUSTA S. FISCHER v. MALLEABLE
## IRON RANGE COMPANY.

225 N. W. 2d 542.

January 24, 1975—No. 44773.

*Hansen, Dordell, Bradt & Koll, Gene P. Bradt,* and *William M. Bradt,* for relator.

*Larkin, Hoffman, Daly & Lindgren* and *Robert J. Hennessey,* for respondent.

Heard before Otis, Peterson, and Scott, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

The Workmen's Compensation Commission awarded benefits under the Minnesota Workmen's Compensation Act to respondent widow of the deceased employee of relator, a self-insured employer, for work-connected injuries sustained in the State of Iowa. Relator, by its petition for certiorari, challenges the commission's jurisdiction to make such award, contending that the Iowa Workmen's Compensation Act is exclusively applicable.

Relator, Malleable Iron Range Company, employer of the deceased employee, is a Wisconsin corporation whose principal business is the manufacture and distribution of stoves and other appliances. The firm's manufacturing facility is located in Beaver Dam, Wisconsin. It distributes products to dealers in Minnesota and Iowa from that location and from a warehouse which it leases in St. Paul, Minnesota.

The deceased employee, Walter B. Fischer, was a resident of Beaver Dam, Wisconsin, when he became employed by relator sometime in the 1930's, and he began his employment at that place. Fischer was subsequently transferred as a salesman to a territory in southern Minnesota and in 1945 became a division manager for the company with southwestern Minnesota as his territory. In February 1970, Mr. Fischer assumed additional responsibility for territory in western Iowa. From that date until the date of his death, his territory consisted of southwestern Minnesota and a portion of western Iowa. From at least 1945 to the date of his death on September 8, 1971, Fischer resided in Mankato, Minnesota.

Fischer maintained an office at his home in Mankato, which he used as a base of operations in personally servicing dealers in the territory and supervising other salesmen who worked under him. At the time of his death, he had 99 dealers in Minnesota and 71 dealers in Iowa as customers. His dollar volume of sales during 1971 was $147,000 in the Minnesota territory and

$71,000 in the Iowa territory. From January to September 1971 Fischer spent 78 days in Minnesota alone, 42 days in Iowa alone, and 47 days in both states.

Fischer was fatally injured in a car accident in Iowa in September 1971. The State of Wisconsin refused jurisdiction over the workmen's compensation claim, and relator subsequently made payment to the employee's widow pursuant to the Iowa Workmen's Compensation Act. Respondent contemporaneously made claims for benefits under the Minnesota Workmen's Compensation Act.

The Minnesota Workmen's Compensation Commission found that respondent was entitled to full benefits under the Minnesota act, with due credit given for payments made under the Iowa act. Jurisdiction was established by Minn. St. 1971, § 176.041, which provides for limited extraterritorial application of the Workmen's Compensation Act in these relevant provisions:

"Subd. 2.   If an employee who regularly performs the primary duties of his employment within this state, or who is hired to perform the primary duties of his employment within this state, receives an injury while temporarily outside of this state in the employ of the same employer, the provisions of this chapter shall apply to such injury. * * *"

"Subd. 3.   If an employee hired in this state by a Minnesota employer, receives an injury while temporarily employed outside of this state, such injury shall be subject to the provisions of this chapter. If the employer's business is in Minnesota and the employee's residence is in Minnesota, employment outside of this state shall be considered temporary."

"Subd. 5.   Except as specifically provided by subdivisions 2 and 3 of this section, injuries occurring outside of this state are not subject to the provisions of this chapter."

The commission based its jurisdiction upon subd. 2; subd. 3 was deemed inapplicable because the deceased employee was not hired in Minnesota.

4

The commission found as matters of fact (1) that the employee performed the primary duties of his employment within Minnesota; and (2) that the employee was temporarily outside of Minnesota at the time of the accident. The first finding is uncontested. The commission based its second finding on a determination that the employee's primary sales territory was Minnesota. Looking to the ratio of Minnesota sales to Iowa sales and the relative locations of the dealers-customers, the commission concluded that "the deceased concentrated his primary sales effort in Minnesota and considered Minnesota his prime territory." Even though "it does not seem that one is 'temporarily' out of Minnesota when he spends a substantial amount of time traveling and selling in Iowa," the commission found that the employee's presence in Iowa should nonetheless be considered temporary so long as the employee's primary work duties and activities were in Minnesota and he returned to his home within Minnesota each week.

Relator concedes that the evidence is clearly sufficient to support the commission's findings of fact. It contends, instead, that the commission based its decision upon a misreading of the statutory language in its application to those facts. Two phrases of the statute must be considered in this context. First, the statute refers to employees who "regularly" perform the "primary duties" of their employment within Minnesota. Second, the employee must receive his injury while "temporarily outside of this state" in the employ of the same employer.

Relator argues that the "primary duties" of the deceased's employment were selling and servicing the employer's products throughout the two-state sales territory, so that the employee "regularly" performed the "primary duties" of his employment in *both* Minnesota and Iowa. Although decedent spent less time in Iowa than in Minnesota, relator urges that his Iowa travels were as much a part of his regular activities on behalf of his employer as his travels in Minnesota. Since the employee worked regularly in Iowa, relator then argues, it is inconsistent to say

that he was "temporarily outside" the State of Minnesota when the accident occurred. If the Iowa accident fell outside of the reach of § 176.041, subd. 2, Minnesota benefits would not accrue to respondent.

The basis of relator's argument is that an employee cannot be "temporarily" in Iowa as long as he goes into Iowa on a regular basis. We think such a reading is compelled neither by law nor by logic. The word "temporarily," as used in this statute, is used in its most natural and ordinary sense, as meaning not of long duration, not permanent, but for a short time. It follows, then, that there is no reason that an employee cannot leave this state on a regular schedule for business purposes, and on such trips still be considered "temporarily outside of this state."

The language of the statute, to be sure, does not precisely fit the present situation. We nevertheless conclude that the employee's situation was reasonably within the scope of the statutory objective. Too narrow a construction of that language is to be avoided where it results in excluding an employee from coverage (Toughill v. Melcher, 288 Minn. 266, 179 N. W. 2d 633 [1970]), for the statute, as we have repeatedly stated, should be liberally construed to afford coverage of all cases reasonably within its purview. Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. 2d 8 (1947); Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. 2d 888 (1954).

Pursuant to Minn. St. 176.511, subd. 5, an award of attorneys fees in the amount of $400 is hereby granted to respondent.

Affirmed.

MR. CHIEF JUSTICE SHERAN took no part in the consideration or decision of this case.