Pauline A. Loomer, w/o Walter E. Loomer, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Hample Equipment Company, Respondents.

Argued June 9, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*John R. Lenahan, Jr.,* with him *Robert J. Beirne,* and *Paul G. Riffle,* for petitioner.

*Joseph E. Gallagher,* with him, of counsel, *O'Malley, Bour & Gallagher,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE ROGERS, July 20, 1978:

Pauline A. Loomer, the widow of Walter E. Loomer, Jr., has appealed from an order of the Workmen's Compensation Appeal Board reversing the award by a referee of benefits on her widow's fatal claim petition. We affirm.

Mr. Loomer, a Pennsylvania resident, was employed as an outside salesman for Hample Equipment Company (Hample), a New York corporation. He had been hired in 1973 at Hample's place of business in New York. Hample's business was that of distributing and installing food service equipment and supplies. Mr. Loomer was Hample's sales representative for Chemung County and a portion of Tioga County in New York, and additionally for the Pennsylvania counties of Bradford, Tioga, Potter, Sullivan, Lycoming and Wyoming. On September 20, 1975, Mr. Loomer and two other Hample representatives departed Sayre, Pennsylvania in a private airplane piloted by decedent. The three were going to Louisville Kentucky to attend a manufacturer's show of restaurant equipment. The airplane crashed in West Virginia and all occupants were killed. Mrs. Loomer filed a claim petition for compensation under The Pennsylvania Workmen's Compensation Act (Act),[1] 77 P.S. §1 et seq.

---

[1] Act of June 2, 1915, P.L. 736, *as amended.*

After a hearing, the referee made the following pertinent findings of fact and conclusions of law:

## FINDINGS OF FACT

3. We find as a fact that . . . decedent [was] employed as an outside traveling salesman for [Hample]. . . .

. . . .

13. [Hample's] place of business was located at Horseheads, New York. . . . The plant was composed of a show room of 10,000 square feet, general offices covering 3,500 square feet and a warehouse covering 25,000 to 30,000 square feet. The defendant was in the business of distributing and installing food equipment services and supplies. It entailed the distribution and selling of food service equipment and supplies to hotels, motels, restaurants, diners, hospitals, various institutions, schools, colleges, nursing homes and retail trade. The defendant had working for them approximately thirty-three to thirty-five employees.

[Hample] was a registered New York Corporation, which had no place of business in Pennsylvania but did business in Pennsylvania, and although the claimant alleges they were registered to do business in Pennsylvania this was not denied or rebutted by [Hample].

Other sales territories of [Hample] were covered by other salesmen and included the areas of Corning, New York; Binghamton, New York; Ithaca, New York; Cortland, New York and vicinity. Don Miller and Mr. Hample, as well as the decedent, sold in territory in Pennsylvania.

14. We find as a fact that the business transactions and invoice files of [Hample] were

at Horseheads, New York. Their accounts were maintained there alphabetically with 4,400 active accounts and with total accounts of 12,000 to 15,000 folders.

[Hample] withheld taxes and Social Security was deducted at the offices in Horseheads, New York.

The decedent was required to attend a meeting with the other salesmen at [Hample's] plant at Horseheads, New York, the [Hample's] principal place of business, every Friday morning at 8 A.M. The decedent would take in his orders and sales slips at that time and they would discuss policy and receive assignments and instructions. Also, new catalogues and price lists would be passed out and sales problems would be discussed.

The decedent had a desk at [Hample's] plant at Horseheads, New York which he could use when he attended the meetings or on other occasions, when the necessity arose or called for it.

15. The decedent used the catalogues for special ordering of specific equipment for the right size and specifications. Salesmen could not carry all the catalogues in their cars nor keep them at home and if they did not have a particular one with them, they would have to go to the [Hample's] plant to get the information needed. They [Hample] would provide the salesmen with as many catalogues as they felt they should have or wanted. The [Hample's] catalogues had 50,000 different items listed and this made it impossible for salesmen to maintain at their homes or carry the number of catalogues in their car that they may have occasion to use.

[Hample] encouraged the salesmen to live in their sales territory. The decedent worked out of his home to cover the routes and he usually called in to [Hample's] place of business and would stop in if they wanted him or when he was in the vicinity and had a reason for stopping.

16. [Hample] would call the decedent at his home or while he was on the road, if they could locate him, requesting that he return the phone call to them for instructions, directions or a tip, or getting a jump on the competition, so that he could get to a prospective customer first.

The decedent worked directly out of his home and maintained in his home and car, materials relevant to his job, including order forms, invoices, catalogues, books of accounts, and paraphernalia for designing, order books and reference material. This material was reclaimed by [Hample] after the death of the decedent.

. . . .

19. We find as a fact that . . . [a]t the time of his death, [decedent's] sales territory in Pennsylvania [was a much larger area than his New York territory and] decedent was required to work only two days out of every month in New York and the rest of the month was spent working in Pennsylvania. . . .

We find as a fact that when Lawrence Patrick Miller was assigned as a salesman for [Hample] in the decedent's territory following the decedent's death, he testified that the total dollar volume of company business from [decedent's] sales territory . . . was seventy-five percent (75%) from Pennsylvania. . . .

. . . .

## CONCLUSIONS OF LAW

4. Since the decedent performed not only a substantial portion of his employment with [Hample] in Pennsylvania but did, in fact, perform a major portion of said employment within the confines of the State of Pennsylvania, the claimant is entitled to compensation under the Pennsylvania Workmen's Compensation Act.

5. Since the decedent was in the course of his employment while furthering the interests of [Hample] at the time of his fatal work-related injury, the claimant is entitled to the compensation provided by the Act.

On appeal, the Board reversed, concluding that:

[Pursuant to Section 305.2 of the Act,[2] 77 P.S. §411.2, benefits may not be granted for] the extraterritorial death of decedent because decedent's employment was *principally localized in New York State* where [Hample] had a place of business and decedent regularly worked at and from said place of business. (Footnote added.) (Emphasis added.)

Section 305.2 of the Act, 77 P.S. §411.2, provides, in pertinent part, that:

(a) If an employe, while working outside the territorial limits of this State, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this act had such injury occurred within this State, such employe, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this act, provided that at the time of such injury:

---

[2] Added by Section 9 of the Act of December 5, 1974, P.L. 782.

(1)    *His employment is principally localized in this State,* or

(2)    He is working under a contract of hire made in this State in employment not principally localized in any state, or

(3)    He is working under a contract of hire made in this State in employment principally localized in another state whose workmen's compensation law is not applicable to his employer, or

(4)    He is working under a contract of hire made in this State for employment outside the United States and Canada. (Emphasis added.)

We are concerned with the proviso clause of Subsection 305.2(a) by which Mrs. Loomer must show that her husband's employment had the characteristics of one of the four numbered subclauses of 305.2(a). Mrs. Loomer relies, as she must, on 305.2(a)(1), saying that decedent's employment was principally localized in Pennsylvania.  We disagree.

Subsection 305.2(d)(4), 77 P.S. §411.2(d)(4), provides that:

(d)    As used in this section.

. . . .

(4)    A person's employment is principally localized in this or another state when (i) *his employer has a place of business in this or such other state and he regularly works at or from such place of business,* or (ii) having worked at or from such place of business, his duties have required him to go outside of the State not over one year, or *(iii) if clauses (1) and (2) foregoing are not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state.* (Emphasis added.)

Mrs. Loomer says that clauses (i) and (ii) of this provision do not apply because decedent did not regularly work at or from Hample's place of business in New York. Therefore, she says, her husband's employment was principally localized in Pennsylvania by force of clause (iii). We are of a contrary view and hold that clause (i) applies. The referee's finding of fact No. 13 establishes that Hample's place of business is located in New York and that it has no place of business in Pennsylvania. The other findings of the referee clearly show that decedent regularly worked at or from Hample's place of business in New York. As the Appeal Board accurately recorded:

[The referee] found in finding of fact #14, that the files were kept at said place of business and the accounts, that decedent attended a meeting at said place of business every Friday, and took orders and sales slips therefrom and would receive assignments and instructions and discuss policy thereat, and also write-up orders and phone customers therefrom. The referee found in finding of fact #15, that salesmen, like decedent, would use the catalogs at the place of business, and get information therefrom and would take catalogs from the place of business to carry in their possession. He found that the defendant encouraged salesmen to live in their sales territory which would be natural for an outside salesman. The referee found in finding of fact #16, that the defendant would keep in contact with decedent by telephone at his home or while he was on the road and decedent would return telephone calls for instructions and directions and for prospective customers. The referee has found facts which indicate that the home office, or

fountain from which his sales activity flowed, was the place of business of the employer in New York. The referee in finding of fact #3, found that decedent was an outside or traveling salesman for the defendant.

It appears quite clear that the decedent in his capacity as an outside salesman worked not only at, at least on Fridays, but also from the business place of the defendant in New York on a regular basis. This requires that Section 411.2 be interpreted to find, as a matter of law, that decedent's employment was primarily localized in New York State. Because it was so localized, this death of decedent is not encompassed by Section 411.2 of the Pennsylvania Workmen's Compensation Act.

Accordingly, we enter the following

ORDER

AND Now, this 20th day of July, 1978, it is ordered that the decision of the Workmen's Compensation Appeal Board be and it is hereby affirmed, and the petition for review of Pauline A. Loomer be and it is hereby dismissed. Judgment is entered in favor of Hample Equipment Company, respondent.