Leighton WESSEL, Personal Representative of the Estate of Joel McGlynn, for and on behalf of the heirs at law of Joel McGlynn, Appellant (Plaintiff),

v.

MAPCO, INC., a Delaware corporation; Mid–America Pipeline Company, a Delaware corporation; Chester Dryer; Erwin E. Hissey; Harvey J. Henderson, Appellees (Defendants),

Charles Neff and John Does 1–10 (Defendants).

No. 87–146.

Supreme Court of Wyoming.

March 30, 1988.

**1364**

Richard H. Honaker of Honaker & Hampton, Rock Springs, for appellant.

Carl L. Lathrop of Lathrop & Uchner, P.C., Cheyenne, Timothy Knaus, Robert Bruce Wark, and Thomas P. Johnson of Mayer, Brown & Platt, Denver, Colo., for appellees.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This appeal presents a wrongful-death/motion - to - dismiss/summary - judgment decision granted to the employer and to the employer's grandparent corporation, as well as to culpable-negligence claims against co-employees. With the death occurring in Colorado, worker's-compensation conflict-of-law issues resulted.

We affirm in part, and reverse in part, holding that § 27–12–208, W.S.1977, 1983 Replacement, is applicable to these facts, and find that it was proper to grant sum-

mary judgment to the employer (Mid-America), and that it was proper to dismiss the action against the grandparent company (Mapco). However, we find error in the trial-court application of Colorado law to the culpable-negligence claims asserted against the co-employees, and reverse the order granting the motion to dismiss granted in contravention of § 27–12–208, W.S. 1977, 1983 Replacement, by our conclusion that a cause of action was properly presented for trial decision.

Initially it is noted that the litigants focused discussion primarily on general rules of choice of law. We will not broaden the scope to encompass that inquiry.

Appellant stated as issues:
"1. Whether, with regard to the choice of substantive law in wrongful death and tort actions, Wyoming should abandon the doctrine of *lex loci delicti,* and adopt the 'modern rule' under which applicable law is determined by weighing various factors indicating which jurisdiction has the most significant relationship to the occurrence and the parties.
"2. Whether this Court should except intentional and reckless misconduct from the immunity granted employers under the Wyoming Worker's Compensation Act."

While this court recognizes this case as one involving a wrongful-death allegation, it still must be examined against the backdrop of the facts which indicate it is more appropriately a worker's compensation-conflict case. Originally, when worker's compensation laws were first passed, many courts applied tort conflict principles and lex loci delicti, such as in *In re American Mutual Liability Insurance Co.,* 215 Mass. 480, 102 N.E. 693 (1913), the first American case involving a claim for compensation when the injury occurred outside the state. Dwan, *Workmen's Compensation and the Conflict of Laws—The Restatement and Other Recent Developments,* 20 Minn.L.Rev. 19 (1935). However, currently it is recognized worker's compensation law-conflict issues present unique policy questions since the process is neither tort nor contract, but a statutory

hybrid, so the traditional conflict theories are inept.

"As a result, virtually all workmen's compensation statutes today contain their own choice of law provisions and cover out-of-state injuries." *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207 (1983).

See 4 A. Larson, Workmen's Compensation Law, § 84; Storke and Sears, *Reciprocal Exemption Provisions of Workmen's Compensation Acts*, 67 Yale L.J. 982 (1958); Note, Recent Legislation *Workmen's Compensation: Injury by Accident: Insurance Costs to Employer: Denial of California Benefits to Employees Temporarily in the State: Labor Code Section 3600.5*, 44 Calif.L.Rev. 387 (1956); Note, *Choice of Law in Workmen's Compensation Cases*, 34 Ill.L.Rev. 226 (1939).

In declining to address the variegated, general conflict-of-law theories, we direct our analysis to the applicable and dispositive out-of-state injuries or extraterritoriality provision in Wyoming's Worker's Compensation Act (state fund) found in § 27–12–208.

## FACTS

Joel McGlynn, age 25 in 1985, was employed by Mid–America Pipeline Company as a pipeliner/welder on a maintenance crew stationed at Rock Springs, Wyoming. One of the company pipelines, used to transport heavy gasses, begins at two points in Wyoming, one near Evanston and the other near Wamsutter, converging at Rock Springs into a single pipeline to continue south to Hobbs, New Mexico.

Present summary-judgment/motion-to-dismiss documentary status suggests for the factual panorama of this case that in the early morning hours of April 17, 1985, a pressure problem was detected in the pipeline and localized as a leak just north of the summit of Baxter Pass in Colorado.[1] McGlynn and his co-employees were dispatched from Rock Springs to the site to conduct the repairs. The area near Baxter Pass is very mountainous and rugged, and the sides of the ditch were steep with a ditch around the pipeline only about eight feet wide and seven feet deep, necessitating equipment to raise and lower the workers into the ditch. Persons present as the pipeline crew at leak site included two supervisors, defendants Dryer and Hissey; and workers: David Anderson, who was unconscious when delivered by helicopter to a hospital; Scott Renck, who was in a coma for ten days; William Sanger; Steven Postle; and Robert O'Neal, all, including decedent McGlynn, receiving medical attention.

The alleged facts of the death occurrence are such that a justiciable jury issue of culpable negligence sufficient for trial may be presented. Upon arrival, decedent and other crew members were directed into the ditch for repair by Chester Dryer and Erwin Hissey, who were employed by Mid–America as the maintenance supervisor and area supervisor respectively. Henderson, the other defendant and safety officer, and senior vice president for Mid–America, may not have been present. Working conditions for repair were unfavorable since the vapors of the highly volatile liquid transported by the pipeline were heavier than air and after leakage would collect close to the ground, resulting in exclusion of oxygen sufficient to cause suffocation for workers unprotected by oxygenation equipment.

Unfortunately, neither protective clothing nor respiratory equipment was brought with the crew to the site. The "safety" procedures used were crude at best, as the workers without lifelines were directed to hold their breath and go down into the ditch for about 30 seconds to work, before coming back out of the ditch for air. When repair first started in the afternoon, there was a slight breeze in the area; however, as the afternoon wore on, the breeze stopped, and the liquid vapors collected and visibly radiated from the ground like heat waves. As the work continued until around 7:00 p.m., crew members began to pass out in the ditch. Because of the terrain and the dimensions of the ditch, it was

---

1. The location of the pipeline leak was at aerial marker 716, which is approximately two miles east of the Utah–Colorado border, within a mountain-site mud-slide area.

difficult to remove the unconscious men who lacked lifelines, and most had to be pulled out by a sideboom on a dozer hooked to their belts. McGlynn, who was not wearing a belt, was the last one retrieved, only to be extracted by a chain tied around his legs. The rescue helicopter did not reach the area, because of its remoteness, until two hours after the accident, and was untimely for his survival.

A claim on behalf of McGlynn was asserted in Wyoming by Mid–America through its compensation fund which made claim payments. Disability and medical benefits were also paid to the other injured members of the crew. Wessel, the personal representative for McGlynn's estate, filed this wrongful-death action in District Court for Sweetwater County, against Mapco,[2] its second-tier subsidiary, Mid–America, and three employees of Mid–America, for culpable negligence in causing the death of McGlynn.

The pleading issue was quickly joined when the individual defendants filed separate motions to dismiss pursuant to Rule 12(b)(6), W.R.C.P., claiming that Colorado law was applicable because Wyoming's choice of law doctrine—lex loci delicti—required the law of the place of the injury to govern, i.e., Colorado, and Colorado does not allow co-employees to be sued for culpable negligence. Mid–America filed a separate motion to dismiss, contending that both Colorado and Wyoming law barred the suit against the employer for work-related injuries. Mapco filed a motion seeking dismissal or, in the alternative, summary judgment, alleging that their only connection with McGlynn's death was that they were a grandparent company of Mid-America and, lacking involvement or control over the operation or employees of the subsidi-

ary, had no liability. Responding to these defenses, the trial court granted Mid–America's motion to dismiss, finding that regardless of which state's law applied, the employer would be immune from suit, and also dismissing the suit against the co-employees by applying lex loci delicti and concluding that the Colorado law which did not include co-employee culpable-negligence coverage was applicable, thus effectively barring the suit against Dryer, Hissey, and Henderson. Subsequently, summary judgment in favor of Mapco was granted. Appeal is taken from the two sustained Rule 12(b)(6) motions to dismiss and the Rule 56, W.R.C.P. summary judgment.[3]

## EMPLOYER AND CO–EMPLOYEES

The claims against Mid–America, Dryer, Hissey, and Henderson were dismissed under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. This court will again restate the standard for review:

" ' * * * In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Warren v. Hart*, Wyo., 747 P.2d 511, 512 (1987), quoting from *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99 [102] 2 L.Ed.2d 80 (1957).

See also *Fiscus v. Atlantic Richfield Co.*, Wyo., 742 P.2d 198 (1987), and *Torrey v. Twiford*, Wyo., 713 P.2d 1160 (1986).

The statutory provision then in effect, § 27–12–103(a), W.S.1977, 1983 Replacement, provided:

"The rights and remedies provided in this act [§§ 27–12–101 through 27–12–804]

---

**2.** Mid–America is owned by Mapco Pipeline Investment, Inc. (Mapco Investment), which in turn is owned by Mapco, Inc. Mapco Investment was never made a party to this case, and Mapco is twice removed from Mid–America.

**3.** Present Wyoming statutory provisions (unitary state fund system) by 1987 repeal do not provide for co-employees' suits by contention of culpable negligence. Applying prior law to the 1985 death effectuates the statute then in effect

and permits maintenance of the action since the governing provisions of the Worker's Compensation Act are the ones in force at the time of the injury. *Swasso v. State ex rel. Worker's Compensation Division*, Wyo., 751 P.2d 887 (1988); *State ex rel. Director, Worker's Compensation Division v. Tallman*, Wyo., 589 P.2d 835 (1979). The change, deletion of co-employee liability, has not yet been subjected to constitutional inquiry.

for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment unless the employees are culpably negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person."

Article 10, § 4 of the Wyoming Constitution states:

" * * * The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death."

*Mid–America:*

 Appellants urge that an intentional tort was committed, thus allowing suit against Mid–America regardless of the employer-employee relationship and any Worker's Compensation Act immunity. This we decline to provide. A similar argument was advanced without success in *Parker v. Energy Development Co.*, Wyo., 691 P.2d 981 (1984), where we held that the employer's immunity was absolute regardless of whether the behavior amounted to culpable negligence or an intentional tort. *Mauch v. Stanley Structures, Inc.*, Wyo., 641 P.2d 1247 (1982), had earlier determined that a contributory employer is immune from suit regardless of its ordinary or culpable negligence. The pervasive immunity of the contributing employer from employee civil liability claims occurring within the scope of employment is settled in Wyoming statutes and specifically authorized by Art. 10, § 4 of the Wyoming Constitution.

Since coverage was clear, contributions to the fund were made, and death benefits paid, the court correctly granted the Rule 12(b)(6) motion in favor of Mid-America as a matter of law.

*Mapco:*

 Based on affidavits as documenting evidence, Mapco, the twice-removed, grandparent company of the actual employer, Mid–America, was granted summary judgment. The standards to be followed concerning the review of summary judgment are established in the six-stage analysis in *Cordova v. Gosar*, Wyo., 719 P.2d 625, 639 (1986). The sixth stage, as defined in *Matter of Estate of Obra*, Wyo., 749 P.2d 272, 274 (1988), is "Substantive sufficiency of responsive affidavits." See also, *Davenport v. Epperly*, Wyo., 744 P.2d 1110, 1112 (1987); *Williams v. Blount*, Wyo., 741 P.2d 595, 596 (1987).

In determining the propriety of any summary judgment, this court will examine the record in the light most favorable to the respondent, with all inferences which can properly be drawn from the evidence. *Cordova v. Gosar*, supra, 719 P.2d at 625; *Rompf v. John Q. Hammons Hotels, Inc.*, Wyo., 685 P.2d 25 (1984).

It is settled Wyoming law that the immunity provisions in the Act should be narrowly construed to extend "to ' "*any employer contributing, as required by law.*" ' " *Fiscus v. Atlantic Richfield Co.*, supra, 742 P.2d at 200, quoting from *Bence v. Pacific Power and Light Company*, Wyo., 631 P.2d 13 (1981). Additionally, in *Fiscus*, supra, 742 P.2d at 200–201, the issue of parent company liability was explored, and this court there recognized that the parent entity, as not being an employer contributing to the fund, was not provided immunity. However, this court further recognized that " '[a] parent corporation can be liable in tort *only* if it has independently assumed and breached a duty distinct from that charged to the subsidiary.' " Id. at 201.

By this reasoning, the parent corporation was analogized as being similar to an owner of a work site who retained the right to direct or assume affirmative safety duties with respect to an independent contractor and his employees, in concluding that a parent corporation exercising operational control of activities of its subsidiary could be liable:

"* * * A corporation that chooses to carry on some of its business through a subsidiary corporation must gain some advantage in separateness, operation, perhaps tax consequences; otherwise, it would not create the subsidiary corporation. But with the advantage gained may come some potential liability. Thus, when the parent retains control of some part of the enterprise, it also retains responsibility; and it may have potential liability for the part it controls." Id. at 202.

This record is devoid of any evidence of control by Mapco over Mid–America sufficient factually to materialize that potentiality. In the complaint, the allegations concerning Mapco were:

"10. THAT Defendant Henderson was at all times relevant hereto, a co-employee of Joel McGlynn, and was an officer of the Defendant MAPCO, Inc., and was an individual responsible for, and in charge of, safety procedures, policies and equipment for Plaintiff's deceased and other employees of MAPCO, Inc. and Mid–America Pipeline Company.

* * * * * *

"12. * * * As [Mid–America's] parent company, MAPCO, Inc. had ultimate responsibility for the acts and omissions of [Mid–America].

* * * * * *

"14. THAT at all times relevant hereto, MAPCO, Inc. and Mid-America Pipeline Company owned and maintained [the pipeline].

* * * * * *

"18. * * * MAPCO had excavated a total of about 1,000 feet of line, and an open ditch was left around the pipeline to relieve pressure on the pipeline on June 13, 1984. Mud slides in the area had caused pressure on the pipeline and MAPCO had excavated a ditch around the pipeline to relieve the pressure.

* * * * * *

"21. THAT MAPCO and Mid–America Pipeline Company have recognized that the vapors of highly volatile liquids create a dangerous situation for personnel during pipeline leaks. * * *

* * * * * *

"25. THAT MAPCO, Inc. and Mid–America Pipeline Company have a duty to monitor their supervisors * * * to ensure that the supervisors are correctly carrying out Company safety policies and procedures, and using Company-mandated policies and procedures in their work."

Mapco factually refuted these pleading allegations as substantiated by the affidavit of Henderson relating that he was an employee of Mid-America and not of Mapco. Another of movant's affidavits established that Mapco never assumed the duty to provide a safe working environment for Mid–America employees since the operational-control criteria was absent.[4] The case came down dispositively to weighing a pleading assertion that the grandparent company was ultimately responsible against affidavits from the individuals asserting that Mapco lacked relevant operational connection, and that no sufficient nexus was shown to conclude that Mapco independently assumed and breached a safety duty in functional control of Mid-America. No issue of fact requiring summary judgment denial is presented. *Boehm v. Cody Country Chamber of Commerce,* Wyo., 748 P.2d 704 (1987); *Davenport v. Epperly, supra.* No evidence responsive to movant's affidavit was presented sufficient to raise an issue of fact as required to deny summary judgment.

## CLAIM OF CO–EMPLOYEE—CULPABLE NEGLIGENCE—CONFLICT OF LAW COLORADO OR WYOMING?

Any claim against the co-employees was dismissed with trial-court application of the

4. It is interesting to note that initially appellant's opposition to Mapco being awarded summary judgment was that discovery had not been conducted. The trial court, in a decision letter dated February 9, 1987, specifically reserved ruling on the motion to allow the appellant to conduct further discovery to refute Mapco's affidavits. Apparently, no advantageous developments occurred in discovery since the record remained unimproved, and the summary-judgment order was entered.

doctrine of lex loci delicti—therefore causing Colorado's law to govern the place of the injury where co-employees cannot be sued in the worker's compensation immunity context. Colo.Rev.Stat. § 8–52–108 (1973); *Kandt v. Evans,* Colo., 645 P.2d 1300 (1982). To the contrary was Wyoming law in effect at death, presenting the determinative inquiry of which state rule to apply. We hold that the trial court improvidently dismissed the claims against Dryer, Hissey and Henderson because Wyoming's provision governing out-of-state injuries is applicable providing a litigable case of culpable negligence asserted against the co-employees by context of pleaded facts provided in the complaint.

While § 27–12–208, W.S.1977 has never been separately construed,[5] our cases have long held that Wyoming Worker's Compensation statutes should be applicable extraterritorially for injuries to a Wyoming worker occurring outside this state. *In Re Byrne,* 53 Wyo. 519, 86 P.2d 1095 (1939). The circumstances in Byrne are similar to the ones in the case at bar. Byrne, a Wyoming resident and employee, was a truck driver who was killed in Colorado in an automobile accident while unquestionably in the scope of his employment. This court recognized the modern trend in finding that the phrase "injuries occurring *elsewhere,*" id. at 1100, set no territorial limits on the Wyoming Worker's Compensation Act's coverage.

" * * * The court in *Hilding v. Department of Labor and Industries,* 162 Wash. 168, 298 P. 321, said [page 323]: 'The authorities generally hold that, unless the Workmen's Compensation Act expressly provides that it shall have no extra-territorial effect, it applies to workmen employed in a state to do work outside of the territorial limits of that state. *Gooding v. Ott,* 77 W.Va. 487, 87 S.E. 862, L.R.A.1916D, 637;

*McGuire v. Phelan–Shirley Co.,* 111 Neb. 609, 197 N.W. 615; *Anderson v. Miller Scrap Iron Co.,* 169 Wis. 106, 170 N.W. 275, 171 N.W. 935; *Saunders' Case,* 126 Me. 144, 136 A. 722. See, also, *State of Minnesota ex rel. Chambers v. District Court of Hennepin County,* 139 Minn. 205, 166 N.W. 185, 3 A.L.R. 1347, and extensive note.' * * *

\* \* \* \* \* \*

" 'The weight of authority in this country sustain the assertion that a Workmen's Compensation Act will apply to injuries to workmen employed in the state and injured while temporarily out of its limits, unless there is something in the act making it inapplicable or clearly denying the right of the employee to recover in such case. Grinnell v. Wilkinson, 39 R.I. 447, 98 A. 103, 106, L.R.A.1917B, 767, Ann.Cas. 1918B, 618; Gooding v. Ott, supra [77 W.Va. 487, 87 S.E. 862, L.R.A.1916D, 637]; Kennerson v. Thames Towboat Co., 89 Conn. 367, 94 A. 372, L.R.A.1916A, 436.* * * *'* [Quoting from State ex rel. Loney v. State Industrial Accident Board, 87 Mont. 191, 286 P. 408, 409 (1930).]

\* \* \* \* \* \*

" * * * [T]he trend of modern authority favors the allowance of a proper claim for compensation under Workmen's Compensation Acts, even though the accident and injuries flowing therefrom took place without the jurisdiction of the forum where compensation is claimed but nevertheless in the regular course of an employment entered into within the state and between residents thereof." (Emphasis added.) Id. at 1098–1099.

Additionally, the applicability of the Full Faith and Credit Clause to the worker's compensation-conflict area has yielded a number of interesting law review articles.[6]

---

**5.** See *Venes v. Heck,* 642 F.2d 380 (10th Cir. 1981) for a case involving the converse of the present situation: a Colorado employee temporarily in Wyoming during the course of his employment was injured in Wyoming.

**6.** Although not exhaustive here, a bibliography of the articles which have dealt with this subject

include: Brenton, *Worker's Disability Compensation,* 8 Workmen's Compensation L.Rev. 184 (1984–1985); Miletti, *Conflicts of Laws—The Scope of the Full Faith and Credit Clause in Successive Workers' Compensation Awards,* 7 Workmen's Compensation L.Rev. 111 (1983–1984); Dahl, *The Iowa Workmen's Compensa-*

At the time of the McGlynn incident, § 27–12–208(a), W.S.1977, 1983 Replacement, provided:

"If an employee, while working outside of the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this act [§§ 27–12–101 through 27–12–804] had the injury occurred within this state, the employee, or in the event of his death resulting from the injury, his dependents, are entitled to the benefits provided by this act, if at the time of the injury:

"(i) His employment is principally localized in this state;

"(ii) He is working under a contract of hire made in this state in employment not principally localized in any state; or

"(iii) He is working under a contract of hire made in this state in employment principally localized in another state whose worker's compensation law is not applicable to his employer."

Since it is undisputed that McGlynn was injured outside the territorial limits of Wyoming while in the course of his employment, we apply this three-step statutory criteria as a matter of law unless factual dispute is presented.

■ Although neither the repealed act nor the new 1987 Worker's Compensation Act define "principally localized," the phrase is defined in the Model Worker's Compensation Act, Section 7, referring to extraterritorial coverage which is almost identical[7] to the Wyoming Worker's Compensation Act's extraterritorial provision. The model act defines "principally localized" as follows:

"(4) A person's employment is principally localized in this or another State when (1) his employer has a place of business in this or such other State and he regu-

---

tion Law and Federal Recommendations, 24 Drake L.Rev. 336 (1975); Storke and Sears, Reciprocal Exemption Provisions of Workmen's Compensation Acts, supra; Note, Workmen's Compensation: Injury By Accident, supra; Comment, Conflict-of-Laws Problems in Workmen's Compensation: Carroll v. Lanza, 23 U. Of Chicago L.Rev. 515 (1956); Note, Exclusive Workmen's Compensation Acts and Conflict of Laws, 10 Wyo. L.J. 149 (1956); Comment, Extraterritorial Application of Workmen's Compensation Laws—A Suggested Solution, 33 Tex.L.Rev. 917 (1955); Note, The Conflicts Problem As Applied to Workmen's Compensation in Colorado, 22 Rocky Mtn.L.Rev. 77 (1949); Note, Conflict of Laws, Workmen's Compensation, 23 Ind.L.J. 214 (1948); Note, Workmen's Compensation—Conflict of Laws, 23 Notre Dame Law. 261 (1948); Note, Application of Full Faith and Credit Clause to Workmen's Compensation Awards, 47 Colum. L.Rev. 846 (1947); Note, Workmen's Compensation: Full Faith and Credit: Previous Award Held No Bar to Subsequent Award in Another State, 33 Cornell L.Q. 310 (1947); Note, Res Judicata—Denial of Recovery By Workmen's Compensation Board of One State Does Not Preclude Recovery in State of Making of Contract of Employment, 60 Harvard L.Rev. 473 (1947); Note, Conflict of Laws—Full Faith and Credit—Choice of Law—Workmen's Compensation, 39 Colum.L.Rev. 1024 (1939); Note, Choice of Law in Workmen's Compensation Cases, supra; Note, Workmen's Compensation—Conflict of Laws—Application of the Full Faith and Credit Clause, 23 Minn.L.Rev. 866 (1939); Note, Conflicts of Laws—Workmen's Compensation, 4 Mo.L.Rev. 203 (1939); Note, Extraterritorial Application of Workmen's Compensation Acts, 26 Va.L.Rev. 95 (1939); Note, Conflict of Laws—Workmen's Compensation, 17 Neb.L.Bull. 386 (1938); Dwan, Workmen's Compensation and the Conflict of Laws, supra; Hall, Extraterritorial Application of Workmen's Compensation Acts, 13 Chi.-Kent L.Rev. 114 (1935); Dunlap, The Conflict of Laws and Workmen's Compensation, 23 Calif.L.Rev. 381 (1935).

7. The Model Worker's Compensation Act provides:

"Section 7. [Extraterritorial coverage.] (a) If an employee, while working outside the territorial limits of this State, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this act had such injury occurred within this State, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this act, provided that at the time of such injury (1) his employment is principally localized in this State, or (2) he is working under a contract of hire made in this State in employment not principally localized in any State, or (3) he is working under a contract of hire made in this State in employment principally localized in another State, whose Workmen's Compensation law is not applicable to his employer, or (4) he is working under a contract of hire made in this State for employment outside the United States and Canada." 4 A. Larson, Workmen's Compensation Law, Appendix H at 629, 648 (Model Act) (1987).

larly works at or from such place of business, or (2) if clause (1) foregoing is not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other State." 4 A. Larson, Workmen's Compensation Law, Appendix H at 629, 649-650 (Model Act) (1987).

A case involving this issue is *Patton v. Industrial Commission,* 147 Ill.App.3d 738, 101 Ill.Dec. 215, 498 N.E.2d 539 (1986), appeal denied 113 Ill.2d 577, 106 Ill.Dec. 49, 505 N.E.2d 355 (1987), where that court found that a truck driver was principally localized in Missouri, where he worked out of a terminal, and that his employment was not principally localized in Illinois, where he was only a resident.

The Illinois Court of Appeals in *Patton* was faced with a case similar to the one at bar, and the Illinois Worker's Compensation Act provided coverage if the employment was principally localized in Illinois yet no definition of "principally localized" was given in the Act. That court, while mindful that the Illinois legislature did not adopt the Model Code, reasoned that the absence of the definition was not an explicit rejection of the Model's definition. Id. at 101 Ill.Dec. at 742, 498 N.E.2d at 543. Likewise, even though the Wyoming legislature also did not adopt the Model Worker's Compensation Act in its entirety, the same strong similarity between the Wyoming Act and the Model Act makes the Model Act's definition of "principally localized" highly persuasive.

Given the undisputed record, it is evident that McGlynn, as a member of a maintenance crew stationed at Rock Springs, Wyoming, was compensated from that office, through which worker's compensation taxes and state unemployment taxes on his account were paid to the state funds. Considering these factors, including base of operation, center of work, formation of the contract, source of remuneration, existence of a facility from which the employee gets

his assignments and control, and post-job return base, we find that the first criterion is met for Wyoming state law application. *Patton v. Industrial Commission,* supra, 101 Ill.Dec. at 742, 498 N.E.2d at 543; *Davis v. Wilson,* Ky.App., 619 S.W.2d 709 (1980); *Phillips v. Oneida Motor Freight, Inc.,* 163 N.J.Super. 297, 394 A.2d 891 (1978); *Nashko v. Standard Water Proofing Co.,* 4 N.Y.2d 199, 173 N.Y.2d 565, 149 N.E.2d 859 (1958); *Jackson v. Tillamook Growers Co-op,* 39 Or.App. 247, 592 P.2d 235 (1979); *Robbins v. Workmen's Compensation Appeal Board (Mason–Dixon Line, Inc.),* 91 Pa.Commw. 269, 496 A.2d 1349 (1985). These cases are to be compared with *Petrilli v. District of Columbia Department of Employment Services,* D.C.App., 509 A.2d 629 (1986); *Hughes v. District of Columbia Department of Employment Services,* D.C.App., 498 A.2d 567 (1985); *George H. Wentz, Inc. v. Sabasta, Iowa,* 337 N.W.2d 495 (1983); *Jarrell v. Employers Casualty Ins. Co.,* La.App., 499 So.2d 947, writ denied 501 So.2d 199 (1986); *Smith v. Liberty Mutual Ins. Co.,* La.App., 473 So.2d 394 (1985); *State ex rel. Stanadyne, Inc. v. Industrial Commission of Ohio,* 12 Ohio St.3d 199, 466 N.E.2d 171 (1984); *Minus v. Workmen's Compensation Appeal Board* (Tastykake Baking Co.), 91 Pa.Commw. 281, 496 A.2d 1340 (1985); *Loomer v. Workmen's Compensation Appeal Board,* 36 Pa.Commw. 591, 388 A.2d 788 (1978), where the employment was found not to be principally localized. While we recognize that pipeline-maintenance employment could be a transitory type of employment that would not be principally located in any one state, that status is not evidenced here, where all of the localization factors were centered in Wyoming.[8]

■ The second part of this test, the viable claim, requires determination whether the appellant would have been entitled to the relief requested under the Wyoming

---

8. For an analysis of situations where the employment is not principally localized in any state, see *United Pipeline Construction Co. v. Kaelin,* Ky.App., 602 S.W.2d 176 (1980); *Pilot v. Workmen's Compensation Appeal Board (Corn-*

*ing Glass Works),* 86 Pa.Commw. 432, 485 A.2d 514 (1984); and *Interstate Carriers Co-operative v. Workmen's Compensation Appeal Board,* 66 Pa.Commw. 288, 443 A.2d 1376 (1982).

act, if the injury had actually occurred in-state. In *Simaitis v. Flood*, 182 Conn. 24, 437 A.2d 828 (1980), the Connecticut Supreme Court was faced with a nearly identical situation. A Connecticut employee was injured in Tennessee during the scope of his employment, while the Connecticut Act allowed co-employee suits and the Tennessee law did not. The Connecticut court held that the employment relation existed in Connecticut so that the Tennessee denial law would not be applied. See, however, *Dueitt v. Williams*, 764 F.2d 1180 (5th Cir.), reh. denied 779 F.2d 682 (5th Cir. 1985); and *Saharceski v. Marcure*, 373 Mass. 304, 366 N.E.2d 1245 (1977), where the law of the forum court forbade co-employee suits but the state of injury allowed them. Clearly, appellant's dependents, by the law then in effect, would have been entitled to maintain a Wyoming suit for co-employees' culpable negligence. *Meyer v. Kendig*, Wyo., 641 P.2d 1235 (1982); *Markle v. Williamson*, Wyo., 518 P.2d 621 (1974); Note, *Torts—Workmen's Compensation—Liability of Fellow Employees Under the Wyoming Workmen's Compensation Law. Markle v. Williamson*, X Land & Water L.Rev. 263 (1975). In this conflict-of-law analysis, the in-state viable-claim criteria would be met.

■ Finally, we consider if the employee's departure was a permanent assignment or transfer.[9] The record is devoid of any evidence indicating that McGlynn had been permanently assigned or transferred to Colorado. This status is not changed by the nature of his work in going to Colorado on a regular basis for pipeline maintenance. An employee can go into another state on a regular basis to work and still only be temporarily outside of his domicile and work-site state. *Fischer v. Malleable Iron Range Co.*, 303 Minn. 1, 225 N.W.2d 542, 545 (1975). Obviously, without regard for work scope in Colorado or Utah, McGlynn was not permanently assigned or transferred to Colorado when he left that early

morning to go to the mountain area repair site.

In his treatise, Professor Larson has addressed the area of out-of-state injuries in reasoning that jurisdiction should be present only where the employment relationship is centered, and that the site of that relationship should be governed by rules similar to those governing questions concerning domicile:

"The big question under this theory is: What is meant by existence or localization of the relation within the State? The location of an injury is easy to identify; the location of a contract less so, but still subject to well-known legal rules; but the whereabouts of a relation between two people has somewhat more mystic quality.

"The making of the contract within the state is usually deemed to create the relation within the state. The relation, having thus achieved situs, retains that situs until something happens that shows clearly a transference of the relation to another State. This transfer is usually held to occur when either a new contract is made in the foreign state, or the employee acquires in the foreign state a fixed and non-temporary employment situs. The analogy to the law governing residence is apparent, with the old residence persisting until the new one becomes fixed. In some kinds of employment, like trucking, flying, selling, or construction work, the employee may be constantly coming and going without spending any longer sustained periods in the local state than anywhere else; but having rooted his status in the local state by the original creation of the relation there, he does not lose it merely on the strength of the relative amount of time spent in the local state as against foreign states. He loses it only when his regular employment becomes centralized and fixed so clearly in another state that any

---

9. Section 27–12–208(c), W.S.1977, 1983 Replacement provided:

"This section does not apply to an employee whose departure from this state is caused by a permanent assignment or transfer."

Section 27–14–204(c), W.S.1977, 1987 Replacement, is identical to the repealed section.

return to the original state would itself be only casual, incidental and temporary by comparison. This transference will never happen as long as his presence in any state, even including the original state, is by the nature of his employment brief and transitory." 4 A. Larson, Workmen's Compensation Law, § 87.42 at 16–102 through 16–104 (1987).

By application of these principles, we determine that § 27–12–208, W.S.1977, 1983 Replacement is applicable, and that the death of Joel McGlynn was an out-of-state injury covered by Wyoming's statutes including co-employee provisions.

We are fortified in analysis, as was the Supreme Court of Mississippi in *LaDew v. LaBorde*, 216 Miss. 598, 63 So.2d 56 (1953) in similar circumstance, that an estoppel is created when this employer paid and the state fund accepted the premiums for the employment as intended to include as covered duties the job duties in an adjacent state. See also 1C A. Larson, Workmen's Compensation Law § 46.45 (1986), and 100 C.J.S. Workmen's Compensation § 401, on insurance coverage creating an estoppel. Additionally, see *Lawrence v. Atlanta Door Company*, 171 Ga.App. 741, 320 S.E.2d 627 (1984) (and cases cited therein), where an insurer who has collected premiums is estopped to deny coverage on the basis that the claimant is exempt from the worker's compensation act's provisions. In *Old Republic Insurance Co. v. Begley*, Ky. App., 314 S.W.2d 552 (1958), that court was faced with a situation where an employer paid worker's compensation premiums on all of his employees. When the insurance company questioned whether Begley was a covered employee, the Court of Appeals of Kentucky succinctly espoused the view:

" * * * It is well established that liability for workmen's compensation may be based on estoppel. *Smith Coal Co. v. Feltner*, Ky., 260 S.W.2d 398. So far as the employer in this case is concerned, there can be little doubt that estoppel binds him." Id. at 556.

See also *Hall v. Spurlock*, Ky., 310 S.W.2d 259 (1957); and *Herndon v. Slayton*, 263 Ala. 677, 83 So.2d 726 (1955), where the payment of premiums on the individual was sufficient to create an estoppel.

Mid-America compensated the other workers injured in this incident through the Wyoming fund, which fact sustains the conclusion that it cannot pick and choose who is or is not a Wyoming-law covered employee by distinguishing the deceased individual from persons who are merely injured. *Herndon v. Slayton*, supra; *Travelers Ins. Co. v. Dudley*, 180 Tenn. 191, 173 S.W.2d 142 (1943). See also *Erie Insurance Exchange v. Workmen's Compensation Appeal Board*, 56 Pa.Commw. 77, 423 A.2d 1145 (1981); *Carter v. Hodges*, 175 Tenn. 96, 132 S.W.2d 211 (1939).

■ Employer and its supervisory personnel seek the best of two worlds (or states' laws), which this court should not properly provide. They seek immunity by application of the Wyoming law in favor of the employer by coverages maintained and actual benefits paid, but then seek immunity for the co-employees under Colorado law. If we were to accede to the latter request, then we would necessarily have to consider whether the Wyoming immunity for the employer initially would exist if applying the same law to both for immunity.

An election was made on behalf of the employer by application of Wyoming law, to afford coverage under the Wyoming Act through paid premiums, social security taxes and benefits, with consequent claim for employer immunity. When Mid-America elected to treat McGlynn as its Wyoming employee for coverage, it was bound to the domicile law for immunity. *Ala-Miss Enterprises, Inc. v. Beasley*, Ala.Civ.App., 446 So.2d 644 (1984).

"Here we have evidence of an employer deducting from the worker's pay a fee for workers' compensation insurance over an extended period of time. It is implicit in the circumstances that the worker relied upon the declaration that he is to be covered by workers' compensation insurance. It would contravene any sense of justice to allow the employer to disavow his declaration that the worker is covered by this insurance."

*Hartford Insurance Group v. Voyles,* 149 Ga.App. 517, 254 S.E.2d 867, 869 (1979).

Summary judgment in favor of Mapco is affirmed; the order granting the motion to dismiss in favor of Mid-America is affirmed; the order granting a motion to dismiss in favor of the co-employees is reversed; and the case is remanded for further proceedings in conformity herewith.

BROWN, C.J., filed an opinion concurring in part and dissenting in part.

BROWN, Chief Justice, concurring in part and dissenting in part.

I would affirm the trial court in all respects.